1  LAW OFFICES OF BASTIAN & DINI
   ROBERT L. BASTIAN, JR. [SBN 170121]
2  MARINA R. DINI [SBN 169176]
   9025 Wilshire Blvd., Suite 500
3  Beverly Hills, CA 90211
   Phone:  (310) 789-1955
4  Fax:      (310) 822-1989
   Email:   robbastian@aol.com;
5            miadini@aol.com

6  Attorneys for plaintiff
   ROBERT W. HIRSH

7

8              **UNITED STATES DISTRICT COURT**

9        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 | ROBERT W. HIRSH, | No. 2:22-cv-05701-MCS-AS |

12 |              Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA** |

13 | *v.* | **COMMERCE CLUB, INC., AND SHALIN HALL'S MOTION FOR** |

14 | CALIFORNIA COMMERCE CLUB, INC., *et al.*, | **SUMMARY ADJUDICATION** |

15 |              Defendants. | *[Filed Concurrently with Statement of Genuine Disputes of Material Fact]* |

16

17 Hearing Date:  July 10, 2023
   Time:               9:00 a.m.
   Ctrm:               7C

18 *Before the Honorable Mark C. Scarsi*

19

20        Plaintiff ROBERT W. HIRSH hereby opposes Defendants CALIFORNIA

21 COMMERCE CLUB, INC., and SHALIN HALL's  Motion for Summary

22 Adjudication.

23

24

25

26

27                            -1-

28
─────────────────────────────────────────────
   **PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

1

## TABLE OF CONTENTS

2                                                                                              <u>Page</u>:

3   Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii.

4   MEMORANDUM OF POINTS & AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . .  2

5   1.    SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6   2.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

7   3.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8   4.    PLAINTIFF PRESENTS NUMEROUS MATERIAL TRIABLE ISSUES

9         OF FACT REGARDING HIS RETALIATION, FALSE ARREST AND

10        EXCESSIVE FORCE CLAIMS AGAINST THE CCC AND HALL ON

11        HIS UNRUH AND BANE ACT CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . 11

12        A.    Plaintiff's section 1983 claim against defendants Hall and

13              California Commerce Club, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14        B.    The ADA and the Anti-retaliation provision . . . . . . . . . . . . . . . . . . 13

15        C.    Unruh Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16        D.    Intentional Infliction of Emotional Distress [I.I.E.D.] . . . . . . . . . . 16

17        E.    Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18  5.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19

20

21

22

23

24

25

26

27                                                     -i-

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE
CLUB, INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION

1

## TABLE OF AUTHORITIES

2    <u>Federal cases:</u>                                                                <u>Page[s]:</u>

3    *Albertson's, Inc. v. Kirkingburg*
        527 U.S. 555, (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4    *Anderson v. Liberty Lobby, Inc.*,
5        477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6    *Brown v. City of Tucson*,
        336 F.3d 1181 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
7
     *Candelore v. Clark County Sanitation Dist.*,
8        975 F.2d 588, 591 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

9    *Celotex Corp. v. Catrett*,
        477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
10
     *Collins v. Womancare*,
11        878 F.2d 1145 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12   *Dias v. Sky Chefs, Inc.*,
        919 F.2d 1370 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
13
     *Franklin v. Fox*,
14        312 F.3d 423 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

15   *Fraser v. Goodale*,
        42 F.3d 1032 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
16
     *Gordon v. N.Y.C. Bd. of Educ.*,
17        232 F.3d 111 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

18   *Hart v. Parks*,
        450 F.3d 1059 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
19
     *Johnson v. Knowles*,
20        113 F.3d 1114 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21   *Mendocino Envtl. Ctr. v. Mendocino County*,
        192 F.3d 1283 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12
22
     *Org. for the Advancement of Minorities v. Brick Oven Rest.*,
23        406 F.Supp.2d 1120 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24   *Schutza v. Cuddeback*,
        262 F.Supp.3d 1025 (S.D.Cal 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25
     *Schutza v. McDonald's Corp.*,
26        133 F.Supp.3d 1241 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

27

28

-ii-

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

*Scott v. Harris*,
  550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Steiner v. Showboat Operating Co.*
  425 F.3d 1459 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tater–Alexander v. Amerjan,*
  2008 WL 961233 (E.D.Cal. Apr.8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thornton v. McClatchy Newspapers, Inc.,*
  261 F.3d 789 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

*Treglia v. Town of Manlius,*
  313 F.3d 7130 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Diebold, Inc.,*
  369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  865 F.2d 1539 (9th Cir.1989) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Warren v. Goord,*
  2008 WL 5077004 (2d Cir. Nov. 26, 2008) . . . . . . . . . . . . . . . . . . . . . . . 14

Federal law:

42 U.S.C. § 12181  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. §12182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. § 12203  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. § 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State cases:

*Agarwal v. Johnson,*
  (1979) 25 Cal. 3d 932  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Potter v. Firestone Tire & Rubber Co.,*
  (1993) 6 Cal.4th 965 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ragland v. U.S. Bank National Assn.,*
  (2012) 209 Cal.App.4th 182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Spinks v. Equity Residential Briarwood Apartments,*
  (2009) 171 Cal.App.4th 1004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Taylor v. Centennial Bowl, Inc,.*
  (1966) 65 Cal.2d 114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

-iii-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE
CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

*White v. Ultramar, Inc.*
    (1999) 21 Cal. 4th 563 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>State law</u>:

California Civil Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Other authority</u>:

CACI, (2022) No. 1600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Restatement of Torts (Second) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

## 1.    SUMMARY OF ARGUMENT

3    The two false pretexts that defendant California Commerce Club, Inc., Casino

4  manager defendant Shalin Hall asserted – that business invitee plaintiff Robert W.

5  Hirsh was a permanently banned customer and that he had violated a Casino water

6  bottle policy – is a but for cause of Hirsh's false arrest.

7    Plaintiff Hirsh presents triable issues of fact that defendant Hall was

8  motivated to evict and ban plaintiff Robert Hirsh from the casino because she was

9  nursing a prior grudge, because he complained to her that the casino might be

10  violating his rights under the ADA and was unevenly applying a water bottle policy

11  loosely associated with a County mask mandate, and because, faced with her

12  indifference, he threatened to take his complaint up the proverbial ladder.

13    She retaliated against him, first, by capriciously and arbitrarily accusing him

14  of violating a rule against having a water bottle on the casino floor, then, portraying

15  him as a previously permanently banned customer of the casino. This false

16  information, although not confirmed or acted upon by casino security, was acted on,

17  without an appropriate investigation, by two LASD deputy sheriffs who, within

18  moments of their arrival at the casino, falsely arrested and abused Hirsh.

19

## 2.    INTRODUCTION

20    Plaintiff Robert Hirsh mostly enjoyed playing small stakes Texas Hold'em

21  poker at defendant Commerce Club Casino. On January 21, 2022, a Friday night,

22  he was, as he had several times before, playing at the casino. Because it was amidst

23  the Covid-19 pandemic, he put on a mask upon his arrival, as was required of all

24  patrons and employees per a Los Angeles County Health Department directive.

25  Because he has several health problems, not least hypertension and diabetes, he had

26  a sealed plastic bag in his pocket containing the several medications he was required

27

28

-2-

to take on a regular schedule. He also had a liter bottle of water to stay hydrated which he placed on the floor while he played. When he felt the need, he would roll his chair back from the table, lower his mask, take a sip, raise his mask, seal the bottle and roll back to the table. This is the rule casino staff had previously enforced and, based on video evidence of the casino floor that evening, the rule that, for all practical purposes, most of the staff was enforcing on the floor, including the table where Hirsh was playing.

After obtaining and donning his mask, Hirsh inserted a casino-issued card into a casino machine which identifies him, keeps track of his playing time so as to log and award food and beverage points as an inducement to play, and places him on an electronic board awaiting placement at a table. The casino's machine accepted his card and he went on to play at two tables that evening.

Hirsh quietly played for more than an hour. At the second table, however, a floor manager interrupted and commanded him to remove the bottle. She sharply accused him of breaking the casino's rules. In the half hour before, Hirsh had quietly played at the second table with his water bottle by his side. Hirsh took exception both to her rebuke and insulting tone. In matter of seconds, the matter escalated and the floor manager instructed the dealer at his table to deal him out. Hirsh calmly gathered himself and asked where the next level was for him to direct his concern regarding how the matter was being handled.

The customer service desk, staffed at the time by, among others, a shift manager, Shalin Hall. Meanwhile, a casino security guard had been summoned to shadow plaintiff. At the counter, the guard, Joaquin Cesenas, stood a few feet away while Hirsh raised his concerns with Hall. Hall, with whom Hirsh had on prior occasions clashed, told Hirsh he had previously been permanently banned from the casino, and essentially accusing Hirsh of being a trespasser. This was false. The

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

1 | security guard Cesenas subsequently reported and testified that the information
2 | was false.

3 | As justification for ejecting him from the casino, she loosely pointed to a ban
4 | on water bottles on the floor. Her interpretation of a water bottle rule was also, as
5 | the casino was enforcing rules that evening, false. Hirsh, appalled by what he
6 | perceived to be Hall's casually false allegations against him, asked to speak to
7 | someone above her. This appeared, to Hirsh, to infuriate her. Although she accuses
8 | Hirsh of raising his voice, something Hirsh denies, video of the interaction shows no
9 | gesticulation, no drama whatsoever. In fact, the security guard, nearby and
10 | nonplused, started tapping his fingers on the counter.

11 | At the end of Hirsh's conversation with Hall, Cesenas approached and told
12 | Hirsh there was a form he could sign which would purportedly "unban" him. Hirsh
13 | asked to see it. Cesenas asked Hirsh to walk with him to the security office to sign
14 | the form. The two calmly walked to the office where Hirsh sat down at Cesenas'
15 | request. He told Cesenas he could not sign anything without having a separate
16 | attorney review it. Hirsh asked to take it with him for separate review. Cesenas
17 | then said that he would not give Hirsh the document.

18 | Once back inside the main floor of the casino, at various times on the next ten
19 | to eleven minutes, uniformed security guards – ultimately four -- shadowed Hirsh.
20 | Ultimately, this caused him concern that his own safety was possibly in danger.

21 | At the counter, Hirsh spoke briefly with Hall and said that he would be calling
22 | 911. He called 911 because he was scared that security was going to physically harm
23 | him. Hirsh thought the officer's presence would prevent security from unduly and
24 | physically ejecting him from the premises. He also wanted law enforcement there
25 | because he wanted the protection of an accurate police report, as he thought his
26 | rights under the ADA were being violated.

-4-

Hirsh placed a call to 911 near the first table on the casino floor while Cesenas and another security officer shadowed him. A third security officer arrived. After speaking with Cesenas, the third officer walked with Hall off screen.  Eventually, Hirsh was being shadowed by three security officers while he sat at the table calling 911, and then still a fourth security officer arrived.

Security officer Cesenas could hear Hirsh complaining to the 911 operator that he was being shadowed by security guards. Because Hirsh was intimidated and scared, and because he was having trouble hearing the person on the other end of the phone call due to noise in the casino, he retreated into the men's room for privacy, trailed by security staff, and from a stall, made a second call. The second dispatcher clarified that, as a result of his prior call, deputies were en route.

While Hirsh was in the men's room, the two defendant deputies, Magdaleno and Bermudez, arrived and were waiting with Cesenas in the hallway. During the brief time the deputies were there, Hall's false information that plaintiff was a previously permanently banned customer and trespasser was somehow communicated to the deputies, although what exactly was communicated and by whom is obscured by the fact that neither deputy, as required by LASD policy, had turned on their body cam. The deputies' own memory of the moments before Hirsh emerged from the restroom is further compromised by each deputy's failure, again as otherwise required by LASD policy, to prepare contemporaneous reports regarding the call.

When Hirsh left the men's room, he originally walked past Magdaleno and Bermudez thinking, as their uniforms, other than shoulder patches, are nearly identical to the guards, that they were merely additional security guards.

In a matter of seconds, the deputies identified themselves. When the deputies identified themselves, Hirsh turned and acknowledged them. He said Hello. He said

-5-

that he was glad they were there, and that he wanted them to take a police report. Then, he invited them to sit down at a table with him so he could explain what had occurred. Further, he was feeling lightheaded and needed to sit down.

In this brief moment, neither deputy indicated disagreement. He started walking in that direction a few steps ahead of them. But, within a few seconds, each grabbed Hirsh by the arm. Deputy Magdaleno aggressively told him he was a "trespasser." Both deputies placed him in control holds. Deputy Magdaleno was particularly aggressive in yanking his arm and causing excruciating pain to his left shoulder, left elbow and left forearm, injuries for which he subsequently received medical treatment and physical therapy. He audibly replied in pain as the deputies were handcuffing him. The two deputies forcibly walked him outside.

Hirsh told Magdaleno that Hirsh, himself, was the one that called the police, and he wanted to give a statement, and that what the deputy was doing was wrong. Magdaleno's response was words to the effect, "shut up, or keep your mouth shut and if you don't, I'm going to taser you."

The defendant LASD deputies' justification for the arrest – their assertion that they were told that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property is contradicted by the security officer handling the matter for the Casino, Cesenas, who says that the topic never came up until after Hirsh had been cuffed and forced outside. Nor did the security guard ever tell the deputies that Hirsh was trespassing.

Regarding their justification for cuffing Hirsh, the deputies answered identically an Interrogatory, number 12 of Set One, as follows:

## INTERROGATORY NO. 12:

When Hirsh was handcuffed, state each articulable fact in your possession that he had committed the crime of

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

trespass?

**RESPONSE TO INTERROGATORY NO. 12:**

\* \* \*

. . . upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation.

Interrogatories, Set One, propounded by plaintiff on defendant Magdaleno; Interrogatories, Set One, propounded by plaintiff on defendant Bermudez. [emphasis added]

Likewise, the two deputies each answered identically the following:

**INTERROGATORY NO. 13:**

State how you became aware of each articulable fact which you contend supported handcuffing Hirsh during the subject incident?

**RESPONSE TO INTERROGATORY NO. 13:**

\* \* \*

. . . upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file

-7-

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

regarding Mr. Hirsh's bar from Commerce Casino's property. Further, upon contact with Mr. Hirsh, he was not complying with Defendant's commands. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation. As such, due to Mr. Hirsh's unpredictable behavior, his significantly larger stature, and the fact it was reported that Mr. Hirsh was trespassing, handcuffs were used to detain Mr. Hirsh pending a further investigation.

According to the report that Cesenas prepared for the casino:

On January 21st, 2022, at approximately 1935 hours, the Security Office was contacted in regards to a possible barred patron at the Casino Service Desk. Robert Hirsh was told by Shift Manager Shalin that he was previously barred and had to leave the property. I escorted Hirsh to the Security Office to give him more information about his status and how to apply for reinstatement. I asked for his I.D. to look him up in our system but he refused to provide any identification. I then explained to him that I am unable to give him any information if he does not identify himself. Hirsh then walks out of the office, sits on an empty gaming table on the poker floor, and calls LASD himself. He then walks into the restroom by the Shift Manager's office while on the phone with 911. LASD arrived on the property and

-8-

met with Hirsh by the restroom. The deputies instructed Hirsh to step outside to talk, he denied their instructions and wanted to sit on the poker floor. Deputies then grabbed Hirsh by his arm, handcuffed him, and escorted him outside to their vehicle. . . .

Commerce Casino Report, 1/21/22 [emphasis added]

Hirsh repeatedly told the deputies he was in pain and asked them to adjust the handcuffs. Deputy Magdaleno responded by again threatening to taser him. Hirsh had problems walking, not least because of the pain, but also because the elastic band on his gym shorts was failing and he was light-headed. One deputy told Hirsh to hold them up with his hands. He couldn't because of the way his hands were cuffed. Outside, the shorts ultimately fell, and the deputies had to lift them back up.

As these events were occurring, Hirsh started to develop adverse symptoms which increased in severity. His heart was pounding. He was sweaty. He was clammy. He was experiencing a headache. He felt lightheaded. He felt like he was going to pass out. He felt dizzy. He had shortness of breath. Hirsh asked several times to be permitted to take his medications. He also asked for water. Each time he was denied. Both deputies searched his pockets and put his medications on the patrol vehicle's front hood.

Outside, Hirsh experienced a medical emergency at the time the deputies placed him, handcuffed behind his back in the back row of deputy Bermudez's patrol car. The deputies concede that, while paramedics were tending to Hirsh, the casino security staff informed them that there was not a trespass warning on file for Hirsh. The deputies explain this is why, after the paramedics left, they removed Hirsh from the backseat and uncuffed him.

-9-

According to Hirsh, he was given a choice to go to jail or to leave the premises. Hirsh elected the latter. Before leaving, he took his medications and water. Before he left, deputy Magdaleno tried to facilitate the casino in giving Hirsh a document to sign. Again, he asked to take the document for the opportunity to have a separate counsel review it. Deputy Magdaleno took the document back to security staff.

During the detention, one of the deputies gave the casino security staff Hirsh's identification so that the casino could research Hirsh in the security office. Before Hirsh left, deputy Magdaleno presented a casino document to Hirsh to sign which, similar to the earlier conversation he had with security guard Cesenas in the security office, he refused, without analysis by outside counsel, to sign. Deputy Magdaleno withdrew the document.

Hirsh subsequently treated for both the physical injuries he sustained during the handcuffing and the psychological trauma related to the entire event.

## 3.  LEGAL STANDARD

In the context of a summary judgment motion, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the motion'." *Scott v. Harris*, 550 U.S. 372, 378, (2007) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

-10-

1  **4.      PLAINTIFF PRESENTS NUMEROUS MATERIAL TRIABLE**

2  **ISSUES OF FACT REGARDING HIS RETALIATION, FALSE**

3  **ARREST AND EXCESSIVE FORCE CLAIMS AGAINST THE CCC**

4  **AND HALL ON HIS UNRUH AND BANE ACT CLAIMS**

5       The Bane Act, California Civil Code § 52.1(b) provides in pertinent part a right

6  of action for anyone "whose exercise or enjoyment of rights secured by the

7  Constitution or laws of the United States, or of rights secured by the Constitution

8  or laws of this state, has been interfered with . . ."

9       For purposes of Hirsh's action, this would include false arrest and excessive

10  force, whether characterized under federal law, 42 U.S.C. § 1983, the California

11  Constitution, or statutory law with respect to false arrest and battery. Further, it

12  would include retaliation against Hirsh for his good faith effort to vindicate rights

13  under the American's with Disabilities Act [ADA] both under federal law and under

14  the Unruh Act.

15       A.      *Plaintiff's section 1983 claim against defendants Hall and*

16              *California Commerce Club, Inc.*

17       In order to allege a conspiracy against a private actor under § 1983, a plaintiff

18  must show "an agreement or 'meeting of the minds' to violate constitutional rights."

19  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.2002) (*citing, United Steelworkers of Am.*

20  *v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir.1989) (en banc)). "To be

21  liable, each participant in the conspiracy need not know the exact details of the plan,

22  but each participant must at least share the common objective of the conspiracy."

23  *Id*. at 441. This agreement or meeting of the minds may be inferred on the basis of

24  circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl.*

25  *Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir.1999).

26       A showing that defendants committed acts that "are unlikely to have been

27                                                    -11-

28  _____

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE
CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

undertaken without an agreement" may support the inference of conspiracy. *Ibid*. Additionally, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See, Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005). In addition, the claim requires "an actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

"Some unlawful objective" is the rousting of plaintiff Hirsh from the casino without lawful justification or following lawful procedures. "The actual deprivation of constitutional rights" is the false arrest and excessive force. The "shared common objective of the conspiracy" is the violation of plaintiff's rights. "The circumstantial evidence of a meeting of minds" includes that the Casino's security staff essentially stepped aside and let the deputies do Hall's bidding.

A section 1983 plaintiff must show that the defendants' actions, such as Hall's ad the Casino's, are "fairly attributable" to the government. *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir.1989). A private individual's action may be "under color of state law" where there is "significant" state involvement in the action. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir.1997). The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.

The "joint action test" is the most applicable. This requirement is satisfied either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.' " *Franklin*, 312 F.3d at 445. But for defendant Hall's false information and but for the deputies

-12-

1  casual willingness to act on the false information, plaintiff's rights would not have

2  been violated. There is, then, "significant," indeed, "but for" involvement by the

3  deputies, sufficient for liability to obtain against defendant Hall and her employer.

4        B.    *The ADA and the Anti-retaliation provision*

5      The ADA prohibits discrimination "on the basis of disability in the full and

6  equal enjoyment of the goods, services, facilities, privileges, advantages, or

7  accommodations of any place of public accommodation by any person who owns,

8  leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

9  12182(a). The ADA requires a private entity whose operations affect commerce and

10  fall within one of the 12 categories enumerated under the Act to provide public

11  accommodations. 42 U.S.C. §12181. Casinos are considered placed of public

12  accommodation because they are private entities that own, lease or operate a place

13  of public accommodation. Due to the casino's multiple functions, they are categorized

14  as either a place of lodging or a food/drink establishment under the ADA. And a

15  sales or rental establishment is a "public accommodation" for purposes of the ADA.

16  42 U.S.C. § 12181(7)(E).

17      Diabetes is a "physical impairment" under the ADA. *Fraser v. Goodale*, 42

18  F.3d 1032 (9th Cir. 2003). Whether a person is disabled under the ADA is an

19  individualized inquiry. *Ibid*. [citing, *Thornton v. McClatchy Newspapers, Inc*., 261

20  F.3d 789, 794 (9th Cir.2001); *but see, Albertson's, Inc. v. Kirkingburg* 527 U.S. 555,

21  566, (1999)[recognizing some impairments might constitute a per se disability.]

22      The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), states:

23          No person shall discriminate against any individual

24          because such individual has opposed any act or practice

25          made unlawful by this chapter or because such individual

26          made a charge, testified, assisted, or participated in any

27

28

-13-

1    manner in an investigation or proceeding, or hearing under

2    this chapter.

3    To prove a prima facie case of retaliation under the ADA, plaintiff must

4    establish by a preponderance of the evidence: (1) he engaged in protected activity;

5    (2) he was subject to adverse action; and (3) a causal link between the protected

6    activity and the adverse action. *See, e.g.*, *Brown v. City of Tucson*, 336 F.3d 1181,

7    1187 (9th Cir. 2003) (ADA employment retaliation case); *Tater–Alexander v.*

8    *Amerjan*, No. 1:08–cv–00372–OWW–SMS, 2008 WL 961233, at *8 (E.D.Cal. Apr.8,

9    2008) (ADA public accommodation retaliation claim).

10   Informal complaints and threats to take legal action qualify as protected

11   activities. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) [citing cases].

12   An adverse action is one that "well might have dissuaded a reasonable [person] from

13   making or supporting a charge of discrimination." *Warren v. Goord*, No. 06-3349-PR,

14   2008 WL 5077004, at *2 (2d Cir. Nov. 26, 2008) [citations and quotation marks

15   omitted] [alteration in original]

16   Causation is proven either: "(1) indirectly, by showing that the protected

17   activity was followed closely by discriminatory treatment, or through other

18   circumstantial evidence such as disparate treatment of fellow employees who

19   engaged in similar conduct; or (2) directly, through evidence of retaliatory animus

20   directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232

21   F.3d 111, 117 (2d Cir. 2000).

22   Construing facts in the light most favorable to plaintiff as is necessary at this

23   stage, plaintiff Hirsh presented evidence in good faith that he had a medical need

24   and proposed a reasonable solution. He additionally has  provided evidence that he

25   was retaliated at least in part because he was asserting his complaint about how the

26   matter was being handled and his differential treatment. Plaintiff also has

27

28

-14-

PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE
CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION

presented *abundant* video evidence, particularly in the supporting evidence to his Separate Material Fact No. 22 that water bottles were widely used on the floor, that casino staff tolerated players having and using water bottles, including drinking from bottles on the casino floor, and that Hirsh was the only player against whom such a rule was invoked to deal him out and eject him from the casino.

There is, then, a close causal connection between his ADA related complaint, for which he had plenty of evidence of differential treatment, evidence which raises a triable issue of fact.

C.    *Unruh Act*

As a general matter, a claim under the Unruh Act requires a plaintiff to allege an intentional act or omission on behalf of defendant. *See, Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F.Supp.2d 1120, 1129 (S.D. Cal. 2005)[cited in *Schutza v. Cuddeback*, 262 F.Supp.3d 1025, 1029 (S.D.Cal 2017)] Thus, "[a] violation of the Unruh Act may be maintained independent of an ADA claim where a plaintiff pleads 'intentional discrimination in public accommodations in violation of the terms of the [Unruh] Act.'" *Schutza v. McDonald's Corp.*, 133 F.Supp.3d 1241, 1247 (S.D. Cal. 2015)[quoted in *Schutza* 262 F.Supp. at 1029]

Causation in cases such as this can be proven either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Construing facts in the light most favorable to the non-moving plaintiff, Hirsh presented in good faith that he had a medical need and sought a reasonable, proportional solution to the problem. Instead, defendant Hall confronted him with

-15-

1  two major falsehoods – that he violated a water bottle policy [in her deposition, Hall

2  conceded she didn't exactly know what the rules were  that evening] and that he was

3  a permanently barred patron. Although those two lies were insufficient to compel

4  casino security to arrest Hirsh, it didn't stop the deputies from reflexively taking up

5  the mantle and rousting and abusing him. Defendant Hall told plaintiff Hirsh, when

6  he told her about his medical needs, that she didn't want to hear it. A triable issue

7  of fact is raised whereby jurors should be permitted to hear.

8       D.  *Intentional Infliction of Emotional Distress [I.I.E.D.]*

9       To succeed on this claim, plaintiff Hirsh must show that defendant Hall

10  engaged in "extreme and outrageous" conduct, intending to cause emotional distress

11  or recklessly unaware of that possibility, and in fact caused severe or extreme

12  emotional distress. *Steiner v. Showboat Operating Co.* 425 F.3d 1459 (9th Cir. 1994)

13  [*citing, inter alia, Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 591 (9th

14  Cir.1992)]; see Restatement of Torts (Second) § 46, at 73 [defendant's conduct must

15  "go beyond all possible bounds of decency" and be "atrocious, and utterly intolerable

16  in a civilized community"]. In addition, she must show that defendant California

17  Commerce Club, Inc., is liable for defendant Hall's acts under the principles of

18  respondeat superior. *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1375 (9th Cir.1990).

19       Among the ways conduct may be considered outrageous if a defendant abuses

20  a relation or position which gives her power to damage the plaintiff's interest.

21  *Agarwal v. Johnson* (1979) 25 Cal. 3d 932, 946 [disapproved of by, *White v.*

22  *Ultramar, Inc.* (1999) 21 Cal. 4th 563]. As a business invitee, plaintiff Hirsh should

23  have received an elevated level of respect from defendant Hall. Instead, he received

24  the opposite, which cascaded into a false arrest and medical event that was

25  obviously related to the mal-treatment he suffered.

26       It is said "[c]onduct is outrageous if a reasonable person would regard the

27

28

-16-

conduct as intolerable in a civilized community. Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure." CACI, (2022) No. 1600.

Outrageous conduct is conduct that is intentional or reckless and so extreme as to exceed all bounds of decency in a civilized community. *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 204 [*citing, Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001. The defendant's conduct must be directed to the plaintiff, but malicious or evil purpose is not essential to liability. *Ibid.*

Whether conduct is outrageous is usually a question of fact. *Ragland* 209 Cal.App.4th at 204 [*citing, Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1045] The question is no different here.

E.    *Negligence*

Regarding plaintiff's negligence claim, it is well-settled law that the proprietor of a business establishment is not an insurer of safety of his business invitees but is required to exercise reasonable care for their safety and is liable for injuries resulting from breach of that duty. *Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121. This includes a duty to take affirmative action to control wrongful acts of third parties which threaten invitees, if a proprietor has reasonable cause to anticipate such acts and probability of injury resulting therefrom. *Ibid.*

Here, the Casino and Hall obviously had an inkling that promoting falsehoods about a patron could lead to damaging consequences, as it did to Hirsh, and that not clearing up those falsehoods could result in further injury. At some point, the Casino did provide the deputies with information which resulted in them uncuffing Hirsh and winding down the harm. Although even a proprietor might have a privileged right under state [but not federal] law to provide even bad information to law enforcement,  proprietors who are in possession of better information which will

-17-

ameliorate what otherwise is an ongoing unlawful detentions have a duty to come to their business invitees' aid. In this matter, there is an inference that if the Casino security staff asserted itself more forcefully, earlier, this event would not have unfolded as it had. That states a claim for negligence.

Moreover, setting aside Hall's animus directed against Hirsh, the mere fact that she was unaware of the rules she was enforcing in a gaming operation – the essence of an operation governed by rules – is a fact suggesting negligent training and supervision.

For these reasons, plaintiff's negligence claim should stand against defendants California Commerce Club, Inc., and Hall.

**5.    CONCLUSION**

For all the foregoing reasons, defendants California Commerce Club, Inc., and Shalin Hall's Motion for Summary Adjudication must be denied in its entirety.

DATED: June 16, 2023                          LAW OFFICES OF
                                              BASTIAN & DINI


                                              *Robert L. Bastian, Jr.*
                                              ROBERT L. BASTIAN, JR.
                                              MARINA R. DINI
                                              Attorneys for Plaintiff
                                              ROBERT W. HIRSH

-18-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE
CLUB, INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

1

CERTIFICATE OF COMPLIANCE

2

The undersigned, counsel of record for plaintiff Robert W. Hirsh, certifies that

3

this brief contains 5796 words, which: complies with the word limit of L.R. 11-6.1.

4

DATED: June 16, 2023                              LAW OFFICES OF

5

BASTIAN & DINI

6

7

*Robert L. Bastian, Jr.*

ROBERT L. BASTIAN, JR.

MARINA R. DINI

8

Attorneys for Plaintiff

ROBERT W. HIRSH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-19-

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB,  INC. , AND SHALIN HALL'S MOTION FOR SUMMARY ADJUDICATION**

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2023, I caused to be served electronically **PLAINTIFF'S OPPOSITION TO DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL' MOTION FOR SUMMARY ADJUDICATION** on the following person(s):

Michael J. Ryan, Esq.                                    mryan@sksrlawyers.com
Ani Khachatryan, Esq.                          akhachatryan@skssrlawyers.com
STEARNS & RYAN, Lawyers
11777 San Vicente Blvd., Suite 555
Los Angeles, CA 90049
Attorneys for Defendants California
Commerce Club, Inc. and Shalin Hall

Rickey Ivie, Esq.                                          rivie@imwlaw.com
Marina Samson, Esq.                                   msamson@imwlaw.com
Ayang Inyang, Esq.                                     ainyang@imwlaw.com
IVIE McNEILL WYATT PURCELL & DIGGS
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Attorneys for Defendants County of
Los Angeles and LASD Deputies
David Magdaleno and George Bermudez

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user: Not applicable.

/s/ *Robert L. Bastian, Jr.*
ROBERT L. BASTIAN JR.

END OF DOCUMENT

-20-