LAW OFFICES OF BASTIAN & DINI
ROBERT L. BASTIAN, JR. [SBN 170121]
MARINA R. DINI [SBN 169176]
9025 Wilshire Blvd., Suite 500
Beverly Hills, CA 90211
Phone: (310) 789-1955
Fax:     (310) 822-1989
Email:  robbastian@aol.com;
            miadini@aol.com

Attorneys for plaintiff
ROBERT W. HIRSH

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. HIRSH,<br><br>          plaintiff,<br><br>*vs.*<br><br>CALIFORNIA COMMERCE CLUB, INC., *et al.*,<br><br>          defendants. | No. 2:22-cv-05701-MCS-AS<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL**<br><br>Hearing Date:  July 10, 2023<br>Time:                    9:00 a.m.<br>Ctrm:                    7C<br><br>*Before the Honorable Mark C. Scarsi* |

Plaintiff ROBERT W. HIRSH submits his Statement of Genuine Disputes of Material Fact pursuant to Central District of California Local Rule 56-2 in support of opposition to the Motion for Summary Adjudication filed by defendants CALIFORNIA COMMERCE CLUB, INC., and SHALIN HALL. Facts 1 through 35 below correspond to the facts and supporting evidence presented in the Statement of Uncontroverted Facts filed by the moving party. These facts are followed by additional material facts and supporting evidence showing a genuine issue.

-1-

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 1 | Plaintiff's Complaint contains eight causes of action. All but the third cause of action (Municipal Liability) are pled against moving parties, Shalin Hall and Commerce Casino. The first cause of action (Retaliation/false arrest/excessive force), second cause of action (Violation of Civil Rights), fourth cause of action (Battery), and fifth cause of action (false arrest), claim Shalin Hall conspired with Los Angeles County Sherriff's Deputies to commit wrongful acts. The sixth cause of action alleges negligence per se based upon of California Penal Code § 182. The seventh cause of action (intentional infliction of emotional distress) and the eighth causes of action (negligence) are predicated on the same facts as the conspiracy claims. | Undisputed. |
|  | Movants' evidence: EXHIBIT 1 - Plaintiff's Complaint, First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action. |  |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 2 | In 2021 and 2022, Commerce Casino was subject to laws promulgated by the County of Los Angeles Department of Public Health designed to curb the spread of the Coronavirus. | Undisputed. |
| | Movants' evidence:<br>• Declaration of John Griffo ¶ 4. | |
| 3 | As conditions changed during the Coronavirus pandemic, the County of Los Angeles Department of Public Health laws were frequently modified based upon changing conditions. | Undisputed. |
| | Movants' evidence:<br>• Declaration of John Griffo ¶ 5. | |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 4 | On January 10, 2022, the County of Los Angeles Department of Public Health issued a public health order stating applicable to Commerce Casino mandating: "Masks must be worn at all times while indoors at cardrooms. Patrons may remove masks only when actively eating or drinking in designated dining areas and may not consume food or beverage while playing or gaming." | Undisputed. |
| | EXHIBIT 2 - County of Los Angeles Department of Public Health Order of the Health Officer. Issue Date: January 10, 2022. Effective Date: January 11, 2022. • Declaration of John Griffo ¶ 6. | |
| 5 | In compliance with the January 10, 2022 Los Angeles County Department of Public Health Order, Commerce Casino established policies and procedures for informing patron they may not eat or drink at the gaming tables, but may do so in designated areas. | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
|  | EXHIBIT 2 - County of Los Angeles Department of Public Health Order of the Health Officer. Issue Date: January 10, 2022. Effective Date: January 11, 2022. • Declaration of John Griffo ¶ 7. |  |
| 6 | In compliance with Los Angeles County Department of Public Health Order issued January 10, 2022, Commerce Casino created signs advising patrons of the prohibition of eating or drinking at the gaming tables. Submitted as Exhibit 3 to this motion, are true and correct copies of the signs that were posted through Commerce Casino. | Undisputed. |
|  | EXHIBIT 3 - Commerce Casino Signage. • Declaration of John Griffo ¶8 and 12. |  |

-5-

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 7 | The signage created by Commerce Casino advising patrons of the prohibition of eating or drinking at the gaming tables were conspicuously posted at entrances, exits and throughout the Casino on LCD screens. Submitted as Exhibit 4 are true and correct copies of screenshots extracted from surveillance video of January 21, 2022, which depict Plaintiff in the same screen shot as the signage created by Commerce Casino advising patrons of the prohibition of eating or drinking at the gaming tables. | Undisputed. |
|  | EXHIBIT 4 - Screenshots extracted from surveillance video of January 21, 2022. <br> • Declaration of John Griffo ¶ 9 and 13. |  |
| 8 | Per the Los Angeles County Department of Public Health mandate, the Casino floor area where the gaming tables are located was designated as a no eating/no drinking area. The walkway areas around the perimeter of the Casino floor were designated for eating/drinking. | Undisputed. |
|  | • Declaration of John Griffo ¶ 10. |  |

-6-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY
DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 9 | Screenshots taken of surveillance video depicting Plaintiff standing on the gaming floor on January 21, 2022. The area circled in red depicts the gaming table area where eating/drinking was prohibited. The area circled in green depicts the general area designated for patrons to eat/drink while at Commerce Casino. | Undisputed. |
|  | EXHIBIT 5 - Screenshot taken of Plaintiff standing on the gaming floor on January 21, 2022.<br>• Declaration of John Griffo ¶ 14. |  |
| 10 | On January 21, 2022, Plaintiff Robert Hirsh was a patron at Commerce Casino, playing poker. | Undisputed. |
|  | Movants' evidence:<br>• Declaration of John Griffo ¶ 10. |  |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 11 | While seated at a poker table, Plaintiff was advised by a Commerce Casino employee he may not drink while at the table. | Disputed: He was told he couldn't have a water bottle at the table, something he was previously told was permissible and the casino was clearly permitting all over the casino floor that evening. |
| | Movants' evidence: EXHIBIT 6 - Plaintiff Dep. 65:11-66:23, Jan. 17, 2023 • Declaration of Shalin Hall ¶ 4. | Opponent's evidence: Plaintiff's Declaration, ¶ 14. |
| 12 | After Plaintiff was told he could not drink at the table, he decided to complain to a person in charge of the Casino. | Disputed: He was told he could not have a water bottle. |
| | Movants' evidence: EXHIBIT 6 - Plaintiff Dep. 67:7-22, Jan. 17, 2023. | Opponent's evidence: Plaintiff's Declaration, ¶ 14. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 13 | Plaintiff approached the information desk to complain and was told by Shift Manager Shalin Hall she previously barred him from the Casino for a mask violation, that Plaintiff was trespassing and that he had to leave. In response, Plaintiff argued with Hall. | Disputed: The testimony of plaintiff defendants cite here state that Hall would not address the matter of the water bottle, say nothing about her mentioning a mask violation, and state that Hall told Hirsh he had been "permanently banned," which was not only false, but subsequently confirmed by Casino security staff. |
| | Movants' evidence: EXHIBIT 6 - Plaintiff Dep. 70:10-71:7; 71:18-25; 72:20-73:11; 73:13-20; Jan. 17, 2023; • Declaration of Shalin Hall ¶ 5. | Opponent's evidence: Plaintiff's Declaration, ¶ 16. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 14 | Plaintiff claims his actionable disabilities are diabetes, high blood pressure, atrial fibrillation (A-Fib), and prostate issues. | Disputed: He claims diabetes as an actionable disability. In the deposition testimony defendants cite, the question as plaintiff understood it, after an objection, was "**I think he want to know what I believe health-wise was wrong with me.**" |
| | Movants' evidence: EXHIBIT 7 - Plaintiff Depo. Vol III, 303:19-304:14. | Opponent's evidence: Defendants' EXHIBIT 7 - Plaintiff Depo. Vol III, 303:19-304:14. |
| 15 | Plaintiff has Type 2 diabetes. | Undisputed. |
| | Movants' evidence: EXHIBIT 7 - Plaintiff Dep. Vol III, 304:19-21; [*sic*] | |
| 16 | Plaintiff's diabetes affects him in that it makes him thirsty and he is required to take medication which tires him out. | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| | Movants' evidence: EXHIBIT 7 Plaintiff Depo. Vol III, 308:10-17. | |
| 17 | In terms of hydrating for diabetes, Plaintiff was instructed to drink 8-12 ounces of water 8 times a day. | Undisputed. |
| | Movants' evidence: EXHIBIT 7 - Plaintiff Depo. Vol III, 309:4-21. | |
| 18 | Plaintiff has never been hospitalized for diabetes. | Undisputed other than that plaintiff answered "not directly" in the testimony defendants cite. |
| | Movants' evidence: EXHIBIT 7 - Plaintiff Depo. Vol III, 306:15-23. | |
| 19 | Plaintiff's high blood pressure affects his life activities in that it requires him to take medications which tire him out. His doctors also told him to exercise and diet. | Undisputed. |
| | Movants' evidence: EXHIBIT 7 - Plaintiff Depo. Vol III, 311:8-20. | |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 20 | Plaintiff's high blood pressure does not require him to hydrate. | Undisputed. |
|  | Movants' evidence:<br>EXHIBIT 7 - Plaintiff Depo. Vol III, 311:22-312:1. |  |
| 21 | Plaintiff's atrial fibrillation (A-Fib) affects his life activities in that it puts him at risk of stroke, requiring him to take medication. | Undisputed. |
|  | Movants' evidence:<br>EXHIBIT 7 - Plaintiff Depo. Vol III, 312:2-22. |  |
| 22 | Plaintiff's atrial fibrillation (AFib) condition does not require him to hydrate. | Undisputed. |
|  | Movants' evidence:<br>EXHIBIT 7 - Plaintiff Depo. Vol III, 314:13-17. |  |
| 23 | Plaintiff's prostate issues affect his life activities in that he takes medications and should exercise weight control, exercise and hydrate. | Undisputed. |
|  | Movants' evidence:<br>EXHIBIT 7 - Plaintiff Depo. Vol III, 314:18-315:11. |  |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 24 | Plaintiff did not ask for an accommodation for his disabilities. | Disputed. On prior occasions at the Casino, Plaintiff had explained his condition and his need for a water bottle and been told he could have a water bottle at his side, and that he could sip by rolling and turning away from the table and, after sipping, returning to the table with his mask. |
|  | Movants' evidence:<br>EXHIBIT 7 - Plaintiff Depo. Vol III, 336:23-337:4. | Opponent's evidence:<br>Defendants' EXHIBIT 7 - Plaintiff Depo. Vol III, 336:23-337:4. |
| 25 | Plaintiff placed several 911 calls. | Undisputed. |
|  | Movants' evidence:<br>EXHIBIT 6 - Plaintiff Depo. 105:1-15; 107:1-4; 122:24-123:6; 135:18-23. |  |
| 26 | When Sheriff Deputies arrived they told Plaintiff he was trespassing and must go outside. | Undisputed. |

-13-

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| | Movant's evidence:<br><br>EXHIBIT 6 - Plaintiff Depo. 168:10-13; 169:14-21. | |
| 27 | Plaintiff states Deputy Magdaleno told Plaintiff he was trespassing a "couple of times." | Undisputed. |
| | Movant's evidence:<br><br>EXHIBIT 6 - Plaintiff Depo. 190:22-24. | |
| 28 | After being told he was trespassing, Plaintiff refused to leave and was handcuffed by the deputies and led outside the Casino. | Undisputed. |
| | Movant's evidence:<br>EXHIBIT 6 - Plaintiff Depo. 156:25-158:14. | |
| 29 | Plaintiff did not see Deputies Magdaleno or Bermudez talking to Ms. Hall before Deputy Magdaleno approached him and handcuffed him. | Undisputed. |
| | Movant's evidence:<br><br>EXHIBIT 6 - Plaintiff Depo. 185:3-11. | |

-14-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| 30 | Commerce Casino security guard, Eric Rodriguez, told Plaintiff that when Commerce Casino has problems with customers, it routinely calls the Sheriff's Department, who "removes people who are deemed to be trespassers and others engaged in criminal activity." | Undisputed. |
| | Movant's evidence: EXHIBIT 6 - Plaintiff Depo. 161:9-162:18. | |
| 31 | While Plaintiff was handcuffed, Deputy Magdaleno told Plaintiff that "on a regular basis, usually nightly or every other night he's at the Commerce Casino ejecting people, at the request of the Commerce Casino, who are trespassers and committing other criminal acts." | Undisputed. |
| | Movant's evidence: EXHIBIT 6 - Plaintiff Depo. 204:9-23 | |
| 32 | Deputy Bermudez corroborated Deputy Magdaleno's statements about the sheriff's department going to the casino on a regular basis to eject trespassers and people committing other criminal acts. | Undisputed. |

-15-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| | Movant's evidence: EXHIBIT 6 - Plaintiff Depo. 204:24-205:4. | |
| 33 | During one of Plaintiff's 911 calls, the 911 Dispatch Operator twice told Plaintiff the Deputies were in front of the Casino and they wanted Plaintiff to meet them outside. Plaintiff twice refused. | Undisputed. |
| | Movant's evidence: EXHIBITS 8a and 8b - 911 Calls Audio Recordings. | |
| 34 | Defendant Shalin Hall propounded Special Interrogatories on Plaintiff. For the First, Second, Fourth and Fifth Causes Action, Plaintiff was required to set forth each fact supporting the existence of the conspiracy. In response to each, Plaintiff identified two facts: 1. Plaintiff was handcuffed so quickly there must have been a "tacit understanding" that the Deputies were acting as an enforcement arm of Commerce Casino; and 2. Statements by a Commerce Casino security office and a Sheriffs Deputy. | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | Moving Party's Statement of Uncontroverted Facts & Supporting Evidence | Opposing Party's Response to Cited Fact & Supporting Evidence |
|---|---|---|
| | Movant's evidence: EXHIBIT 9 - Plaintiff's Responses to Shalin Hall's Interrogatories, Set One, Page 2, Lines 4-12. | |
| 35. | In Plaintiff's Responses to Interrogatories, Set One propounded by Defendant Shalin Hall, Plaintiff identified the conspiracy as: "Eric Rodriguez, who identified himself as the head of security for the casino, and Defendant Deputy Magdaleno himself, outside the casino, admitted to me an arrangement whereby the casino and Deputies act in concert in evicting patrons at the behest of the casino." | Undisputed. |
| | Movants' evidence: EXHIBIT 9 - Plaintiff's Responses to Shalin Hall's Interrogatories, Set One, Page 2, Lines 4-12. | |

**THE NON-MOVING PARTY, PLAINTIFF ROBERT W. HIRSH'S ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE SHOWING A GENUINE ISSUE**

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On January 21, 2022, plaintiff Hirsh drove to the California Commerce Club casino where he often enjoyed playing low stakes Texas Hold'm poker in a relaxed, informal environment. | Hirsh Decl., ¶ 1; Plaintiff's Exhibit A |
| 2. | Upon arriving, Hirsh walked to a table, received and donned a face mask. | Hirsh Decl., ¶¶ 3-6; Plaintiff's Exhibits A-2 and -3. |
| 3. | Thereafter, Hirsh walked to an electronic device on the casino floor and put his casino membership card into the machine. The card was accepted. | Hirsh Decl., ¶ 7; Plaintiff's Exhibit A. |
| 4. | Hirsh walked across the floor with a plastic water bottle conspicuously in his hand, and a casino staff member assigned him to a table. | Hirsh Decl., ¶ 8; Plaintiff's Exhibits A-4 and -5 |

-18-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 5. | On prior occasions at this casino during the pandemic, casino staff had instructed Hirsh that it was permissible to have a water bottle on the floor. Hirsh was permitted to drink if he rolled away from the table, then when finished, replaced his mask before he rolled back to the table. The casino staff member seating Hirsh did not instruct him otherwise. | Hirsh Decl., ¶ 9; Plaintiff's Exhibit A-5. |
| 6. | Having access to water was important to Hirsh because he suffers from several medical conditions, not least, diabetes. He needs access to water to stay hydrated and clear headed while he plays cards, and to take medications as necessary. | Hirsh Decl., ¶ 10. |

-19-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY
DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 7. | Hirsh was not concealing his water bottle while he was being seated by casino staff at Table 41 or from the dealer in front of him. For the duration of the approximately 47 minutes he played at Table 41, Hirsh played uninterrupted. No one commented on or barred him from having a water bottle. | Hirsh Decl., ¶ 11; Plaintiff's Exhibits A-5 and -6. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 8. | Eventually, Hirsh gathered his casino chips and water bottle and went to Table 40 where he played uninterrupted for approximately one hour. Approximately 19 minutes after he moved to Table 40, Hirsh rolled away, as he had been instructed, took a drink from his water bottle, replaced his mask, and swivelled his chair back. The dealer sitting in front of him neither objected or instructed him otherwise. | Hirsh Decl., ¶¶ 12 and 13; Plaintiff's Exhibits A-9, -10; regarding the drink from the water bottle, this is at A-9, 19 minutes, 0-15 seconds. |

-21-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 9. | A casino employee, later identified as Nancy Zhang, abruptly interrupted Hirsh at Table 40 who yelled at him that he was not allowed to have a water bottle on the floor. She was insulting and rude. Hirsh explained to her that he was diabetic, that he needed that water bottle for medical reasons, and that he had previously been told both that having a bottle on the floor and making use of it was acceptable. Her response was hostile. She walked around the corner of the table by the wall, a few feet from where another player had placed his water bottle on the floor. | Hirsh Decl., ¶ 13; Plaintiff's Exhibit A-11, 48 minutes, 54 seconds until the video's completion; regarding the other water bottle, Plaintiff's Exhibit A-13, 28 minutes, 28-34 seconds. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 10. | Ms. Zhang walked back to Hirsh while still on the phone and spoke with him. This conversation lasted approximately 1 minute, 30 seconds. During the conversation, Zhang directed the dealer to deal Hirsh out. Again, he told her that he needed the water to stay hydrated and to take his medications. He pulled out and showed her his bag of medications [as also reflected on Video A-13, the overhead of Table 40 at 42 minutes, 50 seconds]. She screamed at him "no water" and walked away. For approximately the next 3 minutes, he sat there stunned and gathered himself. He, then, walked over to customer service to make a complaint. | Hirsh Decl., ¶ 14; Plaintiff's Exhibit A-14. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 11. | When he reached the customer service desk, Shalin Hall was there. On one prior occasion, the two had clashed. Hirsh Decl., ¶ 15. | Hirsh Decl., ¶ 15. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 12. | Ms. Hall's demeanor towards Hirsh was even more hostile than Ms. Zhang. Hall falsely stated that, on a prior occasion, she had permanently banned him from the casino. He responded, this was not true. He then explained that he had a valid medical reason under the ADA, i.e., diabetes, for having the water bottle at his side. She said that she was not interested in hearing about that. He then asked her to direct him to her supervisor so he could make a complaint. This appeared to infuriate her and her tone became increasingly defiant and hostile. During this conversation, nor at anytime on this evening, did Hirsh raise his voice, lose his composure or behave disrespectfully. | Hirsh Decl., ¶ 16; Plaintiff's Exhibit B, Cesenas incident report, 1-21-22. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 13. | Indeed, the casino security's subsequent report expressly states: "Hirsh was looked up in the system after the deputies provided us with his I.D. but he was not previously barred." | Plaintiff's Exhibit B, Cesenas incident report, 1-21-22. |
| 14. | At his deposition, Cesenas responded as follows: "Q.· The question is to your knowledge, was the information that Ms. Hall provided to you that he had been evicted on a prior occasion -- was that accurate? A.· No." | Plaintiff's Exhibit D, Cesenas Depo, 22:9-12. |
| 15. | During this conversation with Hall, Hirsh remained outwardly calm. | Plaintiff's Exhibits A-15, -16 and -17. |
| 16. | Hall falsely accused Hirsh of improperly failing to wear a mask and of improperly having a water bottle on the floor. | Plaintiff's Exhibit C, Hall Depo., 46:4-14. |

-26-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 17. | Hirsh, though, plainly had a mask on from the moment he entered into the casino, including during his conversations with Hall. | Plaintiff's Exhibits A-1 through A |
| 18. | Moreover, Hirsh had a mask on from the time Zhang first focused her attention on him and during her conversations with him. | Plaintiff's Exhibit A-11, 48 minutes, 48 seconds until the end and A-13, from the beginning until one minute, 29 seconds. |
| 19. | When asked in her deposition if there was ever an effort to establish on security video that Hirsh was failing to wear a mask, she indicated that she was unaware of any. Security guard Cesenas gave the same response. | Plaintiff's Exhibit C, Hall Depo., 47:13-22; Plaintiff's Exhibit D, Cesenas Depo., 46:3-11. |
| 20. | Early in her deposition, Hall indicated that there was a casino rule against having a water bottle on the floor. | Plaintiff's Exhibit C, Hall Depo., 48:24-49:10. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 21. | However, after being confronted with casino video evidence of water bottles and their use on the casino floor, Hall admitted that she did not recall the rules regarding a water bottle on the floor for the date of the incident. | Plaintiff's Exhibit C, Hall Depo., 87:18-88:18. |

-28-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 22. | In fact, the video evidence shows that water bottles were widely used on the floor, that casino staff tolerated players having and using water bottles, including drinking from bottles on the casino floor, and that Hirsh was the only player against whom such a rule was invoked to deal him out and eject him from the casino. | Plaintiff's Exhibits A-4[ a person second to the left with his back to the camera appears to be holding a beverage in his left hand while playing]; |
| | | Video A-6 [Starting at 1:27, a man wearing a blue t-shirt with a bottle in his left hand descends the stairs to the screen's left, walks over and takes a seat two tables to the right of Hirsh and puts the bottle on the floor at 1:50; at 2:12-16, a man wearing a blue plaid shirt with what appears to be a water bottle in his left hand takes a seat at the table in the bottom left corner, a few feet from Hirsh; at 2:36, a man wearing a red jacket with black sleeves descends the stairs to the screen's left, walks to the table to the right of Hirsh's table along the wall, sits down and places his water bottle on the floor, at 2:54 seconds; at 3:18-33 seconds, a |

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | | with a water bottle in his hand. Five seconds later, a man, wearing a black shirt, emerges from the casino store to the screen's left, walks out, down the stairs and across the floor with the bottle; at 3:58 seconds, that man exits to the screen's right; at 6:53 seconds, a second man emerges from the store, wearing a black jacket over a red shirt, with a water bottle in his hand, walks down the stairs, makes a right turn down the aisle and exits at the bottom left corner of the screen]; <br><br>Video A-7 [near the beginning, both the staff member wearing the white shirt and Hirsh can be seen pointing to an empty chair. Hirsh sits down with his water bottle conspicuously in his hand in front of the dealer, collects himself, with his left hand puts the water bottle on the floor, and joins the game.]; <br><br>Video A-8 [at 33 seconds, a |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
|  |  | the ramp and the aisle behind Hirsh with a full glass of beer in his left hand; at 1:32 seconds, Hirsh picks up his water bottle, swivels away from the table, lowers his mask, takes a drink, closes the bottle, and puts his mask back on while swiveling back to the table; at 1:39 seconds, exactly at the same time as Hirsh is putting his water bottle on the floor, a red-headed woman seated at the end of the second table to the right of Hirsh at the bottom of the screen pulls a water bottle out of her bag and takes a swig; at 5:05, a man wearing a brown jacket walks into the screen from the right with a water bottle conspicuously in his left hand and walks across the screen to an empty chair at the table to Hirsh's immediate right, puts it on the table at 5:23, picks up a chip rack, leaving the bottle at the table; at 7:47 |

-31-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     |                           | table and puts it on his chair; in the last 10 seconds of the video, Hirsh gathers his things, including his water bottle, and migrates to Table 40]; |
|     |                           | Video A-9 [at 20 seconds, Hirsh sits down with a water bottle conspicuously in his hand. Meanwhile, a man in a blue shirt walks in with a bottle conspicuously in his hand and sits down at the bottom of the table in the middle, two tables from Hirsh's; at 7:8 seconds, a man wearing a grey sweat shirt rises from a table in the middle of the floor and attempts to gain the attention of casino staff. He conspicuously has a water bottle in his hand [and his mask is well below his nose]; at 7:36, the player wearing grey approaches a casino employee wearing a yellow shirt and brown vest; at 7:38-42, as she walks away from the man in |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     |                           | player wearing a white hat with a blue bill taking a big swig of water from a water bottle; at 8:6, the player in the grey sweat shirt resumes his conversation with the casino staff member; at 8:8, he uses the water bottle in his outstretched hand to point out a table to the staff member at 13:34, a woman wearing black walks down the stairs to her left, delivers something to a gentleman playing at a table in the middle right; at 14:6, she walks around a man wearing a Dodger's hat who has swivelled away from the table, lowered his mask and takes a swig from his water bottle; she walks to the next table, opens a bag of potato chips and starts eating; at 17:5, the man in the blue shirt uncaps his drink; a casino employee gestures he cannot drink; he puts his bottle back on the floor and plays on; at 19:5, |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     |                           | water bottle, and, replacing his mask, swivels back to the table; at 22:40, the player in the red jacket/black sleeves conspicuously uncaps his bottle, lowers his mask and takes a swig, then puts the bottle in his lap while a new dealer walks past him.]; |
|     |                           | Video A-10 [at 9:41 – another angle of 19:5 in Video A-9, Hirsh, conspicuously in front of the dealer, picks up his water bottle, rolls back, turns, off camera takes a drink of water, replaces his mask, rotates back, and puts the water bottle on the floor.]; |
|     |                           | Video A-11 [at 2:42-3:17, the player with the red jacket with black sleeves walks in, conspicuously takes a drink from a water bottle as he passes a casino security guard, walks onto the casino floor and sits down at Table 40, three seats from Hirsh, and conspicuously places the bottle on the |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     |                           | with his water bottle conspicuously in his hand; at 45:36-54, a man wearing a blue coat walks into the casino, onto and across the floor with a water bottle conspicuously in his hand; at 48:50, a casino employee with a white shirt and black tie points to another casino employee, Nancy Zhang, in the direction of Hirsh. She walks over and commenced her first conversation with Hirsh, The video ends with Zhang, wearing a beige pants suit, stepping away and talking on her cell phone.]; |
|     |                           | Video A-12 [at 1:22, Hirsh rolls back, turns, takes a sip, closes bottle, returns mask and rolls in; at 18:50, Hirsh again rolls back, turns, takes a sip, closes bottle, returns mask and rolls in; at 20:30, the player in the red jacket with black sleeves, stands up, then picks something up from the |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     |                           | sitting; at 21:1, this player sits back down with a water bottle in his left hand. For the next minute and a half, he holds the bottle in his lap; at 22:25, the player opens and raises the bottle as he swivels from the table and off screen, Seconds later he swivels back with the bottle closed and in his right hand; at 23:6, the player leaves the table and 27:37, he returns with the water bottle in his right hand, sits down and puts the bottle on the floor to his left.];<br><br>Video A-13 [at 28:26, the man in the red jacket with black sleeves returns to the table and puts his water bottle on the floor to his left.];<br><br>Video A-21 [at 3:00-30, a man walks between where a guard is watching Hirsh and Hirsh is on the phone, opens a bottle, takes a drink, then, with his bottle in his hand walks back to the center of the Casino. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY
DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 23. | Hall's interpretation of the rules regarding water bottles was further negated by casino security guard Cesenas' deposition testimony on the topic: "Q.· You actually picked up the bottle that  Mr. Hirsh had that evening when the sheriff's deputies· handcuffed him; correct? A.· Yes. Q.· Did you believe that he was disobeying the casino's policy when he carried that water bottle with  him up to the security office? A.· Okay.· He -- I'm sorry.· Can you repeat the  question? Q.· Did you -- he was carrying that water bottle  with him up to the security office; correct? A.· Yes. Q.· Did you ask him to dispose of the bottle? A.· No. Q.· Why not? A.· What if he was | Plaintiff's Exhibit D, Cesenas Depo. 48:23-49. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 24. | During this conversation between Hirsh and Hall, a casino security officer, later identified as Joaquin Cesenas, watched at the counter to Hirsh's left. At the end of Hirsh's conversation with Hall, Cesenas approached and told Hirsh there was a form he could sign which would purportedly "unban" him. Hirsh asked to see it. Cesenas asked Hirsh to walk with him to the security office to sign the form. | Plaintiff's Decl. ¶ 17; Plaintiff's Exhibit A-18. |
| 25. | At the office, Hirsh sat down at Cesenas' request. He told Cesenas he could not sign anything without having a separate attorney review it. Hirsh asked to take it with him for separate review. Cesenas then said that he would not give Hirsh the document. That office visit lasted less than 30 seconds. | Plaintiff's Decl., ¶ 18; Plaintiff's Exhibit A-19. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 26. | Cesenas and Hirsh then walked back to the customer service counter. Another security officer followed and was shadowing Hirsh at the counter. At the counter, Hirsh spoke briefly with Hall and said that he would be calling 911. He called 911 because he was scared that security was going to physically harm him. Hirsh thought the officer's presence would prevent security from unduly and physically ejecting him from the premises. He also wanted law enforcement there because he wanted the protection of an accurate police report, as he thought his rights under the ADA were being violated. | Plaintiff's Decl., ¶ 19; Plaintiff's Exhibit A-20, -21. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 27. | Hirsh placed a call to 911 near the first table on the casino floor while Cesenas and another security officer shadowed him. A third security officer arrived. After speaking with Cesenas, the third officer walked with Hall off screen.  Eventually, Hirsh was being shadowed by three security officers while he sat at the table calling 911, and then still a fourth security officer arrived. | Plaintiff's Decl., ¶ 20; Plaintiff's Exhibit A-22. |
| 28. | Security officer Cesenas could hear Hirsh complaining to the 911 operator that he was being shadowed by security guards. | Plaintiff's Exhibit D, Cesenas Depo., 26:24-27:1. |
| 29. | Because Hirsh was intimidated and scared, and because he was having trouble hearing the person on the other end of the phone call due to noise in the casino, he retreated into the men's room for privacy and to make a second call to 911. | Plaintiff's Decl., ¶ 21; Plaintiff's Exhibits A-22 [last 5 seconds] and A-23 [at 12 minutes.] |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 30. | At this point, the casino security guards were not telling Hirsh where to go or preventing him from going to the men's room. Nor had the guards made any commands to Hirsh, nor had Hirsh disobeyed any such command. | Plaintiff's Exhibit D, Cesenas Depo. 26:7-27:1. |
| 31. | When Hirsh walked out of the men's room approximately six minutes later, he walked passed defendant deputies David Magdaleno and Jorge Bermudez, not knowing that they were deputies as opposed to casino security staff who wore similarly shaded uniforms. | Plaintiff's Decl., ¶ 22; Plaintiff's Exhibits A-23, 18:14, and A-24; Plaintiff's Exhibit H, Bermudez Depo., 55:18-56:1. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 32. | When the deputies identified themselves, Hirsh turned and acknowledged them. He said Hello. He said that he was glad they were there, and that he wanted them to take a police report. Then, he invited them to sit down at a table with him so he could explain what had occurred. Further, he was feeling lightheaded and needed to sit down. In this brief moment, neither deputy indicated disagreement. He started walking in that direction a few steps ahead of them. Within a few seconds, each grabbed Hirsh by the arm. Deputy Magdaleno aggressively told him he was a "trespasser." Both deputies placed him in control holds. Deputy Magdaleno was particularly aggressive in | Plaintiff's Decl., ¶ 22; Plaintiff's Exhibits A-23, 18:14, and -24; Plaintiff's Exhibit D, Cesenas Depo., 25:25-26:3;.Videos A-24, -25, -26 -27, and -28. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| | excruciating pain to his left shoulder, left elbow and left forearm, injuries for which he subsequently received medical treatment and physical therapy. He audibly replied in pain as the deputies were handcuffing him. As reflected at the end of Video A-23, the two deputies forcibly walked him outside. | |
| 33. | Hirsh clearly stated his intention to talk to deputies at one of the empty tables on the casino floor. Hirsh did not have trouble communicating. Nor did he appear to the deputies to be impaired | Plaintiff's Exhibit H, Bermudez Depo., 57:21-58:9; 59:2-25; 68:18-22; Plaintiff's Exhibit G, Magdaleno Depo., 56:25-57:10. |
| 34. | According to deputy Bermudez, when Mr. Hirsh told him he didn't want to go outside, the deputies did not give Hirsh time to reconsider his answer. | Plaintiff' Exhibit H, Bermudez Depo., 91:2-7. |

-43-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 35. | Once the deputies applied control holds or when Hirsh complained of pain during the handcuffing, this is something that LASD policy required the deputies to report, something neither did. | Plaintiff's Exhibit G, Magdaleno Depo., 35:14-37:1; Plaintiff's Exhibit H, Bermudez Depo., 22:3-30:2. |
| 36. | Regarding the reporting requirement, deputy Magdaleno acknowledged that the lead deputy – in this case Bermudez – should have coded the event properly on the LASD's SACR [Sheriff's Automated Contact Reporting] system because the deputies had detained Hirsh. | Plaintiff's Exhibit G, Magdaleno Depo., 35:14-37:1. |
| 37. | None of these conversations that the deputies had with the casino staff or with Hirsh were recorded because neither deputy Magdaleno or deputy Bermudez turned on their bodycams as otherwise required by LASD policy. | Plaintiff's Exhibit G, Magdaleno Depo., 79:6-11; Plaintiff's Exhibit H, Bermudez Depo., 30:25-31:12. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 38. | Each bodycam has separate buttons for audio and for video. For the two deputies to be believed – that they thought they had turned on their device, but only found out later that they hadn't – that would have required 4 separate failures to click on their respective devices. | Plaintiff's Exhibit H, Bermudez Depo., 37:21-38:23. |
| 39. | Normally, in calls for trespassing at the casino, the casino staff has already handcuffed the suspect and presents them to deputies. The subject incident was, in deputy Bermudez's words, "a different situation." | Plaintiff's Exhibit H, Bermudez Depo., 62:2-24. |

-45-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 40. | Hirsh told deputy Magdaleno several times that he [Hirsh] was the one who called the police and he wanted to give a statement and have the deputy take a full report. Hirsh also told him what he was doing was wrong. In response, deputy Magdaleno made statements to the effect of "shut up, or keep your mouth shut and if you don't, I'm going to taser you." | Plaintiff's Decl., ¶ 23. |

-46-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 41. | Hirsh repeatedly told the deputies he was in pain and asked them to adjust the handcuffs. Deputy Magdaleno responded by again threatening to taser him. Hirsh had problems walking, not least because of the pain, but also because the elastic band on his gym shorts was failing and he was light-headed. One deputy told Hirsh to hold them up with his hands. He couldn't because of the way his hands were cuffed. Outside, the shorts ultimately fell, and the deputies had to lift them back up. | Plaintiff's Decl., ¶ 24. |

-47-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 42. | As these events were occurring, Hirsh started to develop adverse symptoms which increased in severity. His heart was pounding. He was sweaty. He was clammy. He was experiencing a headache. He felt lightheaded. He felt like he was going to pass out. He felt dizzy. He had shortness of breath. Hirsh asked several times to be permitted to take his medications. He also asked for water. Each time he was denied. Both deputies searched his pockets and put his medications on the patrol vehicle's front hood. | Plaintiff's Decl., ¶ 25. |

-48-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 43. | The deputies then placed Hirsh in the second row of seats in the patrol vehicle. His heart started racing and he was having problems breathing. He asked a deputy to lower a window. Instead, they locked Hirsh in the vehicle with the windows closed. While in the vehicle, he slumped over to his left, his eyes shut. Hirsh felt like he had fallen asleep or had just blacked out, and then at some point, after a period of time, he came back. | Plaintiff's Decl., ¶ 26. |
| 44. | Sometime during this sequence, a deputy asked if Hirsh wanted the paramedics to be called. Hirsh said Yes. | Plaintiff's Decl., ¶ 27. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 45. | The fact that the deputies placed Hirsh in the back seat of Bermudez's patrol vehicle is another event that, pursuant to law and LASD policy, should have been recorded on the LASD's SARS system which, in turn, would have triggered a required report. | Plaintiff's Exhibit G, Magdaleno Depo., 40:4-44:25. |

-50-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 46. | The paramedics took Hirsh's vitals and told him that his heart rate was elevated to 166, a condition known as tachycardia. A paramedic asked if Hirsh wanted to be taken to the hospital. Fearful that if he remained in custody, among other things, he would have to wait even longer for his meds and water, and wanting to go home where he knew that his wife, a retired emergency room doctor, could take proper care of him, he told the paramedic that he would rather take a chance on his own than remain in the custody of these deputies. One deputy uncuffed him. | Plaintiff's Decl., ¶ 28; Plaintiff's Exhibit A-30. |
| 47. | According to deputy Bermudez, he explained to Hirsh that he was being released because "there was no trespassing." | Plaintiff's Exhibit H, Bermudez Depo., 121:17-25. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 48. | After he took his medications, the deputies asked Hirsh to stay longer so that they could present him with a document. He waited. Deputy Magdaleno presented Hirsh with a document from the casino and asked him to sign it. In response, Hirsh told him that he would not sign any document without the independent review of separate counsel. | Plaintiff's Decl., ¶ 29; Plaintiff's Exhibit A-31 [at 5 and at 9 minutes] |
| 49. | One of the deputies gave Hirsh's identification that they had confiscated from him to the casino security staff so that they could research Hirsh in the casino's security office. | Plaintiff's Exhibit B, Cesenas incident report, 1-21-22; Plaintiff's Exhibit D, Cesenas Depo., 22:14-23:18. |
| 50. | The deputies did not ask for Hirsh's permission to share his identification with the casino, nor did Hirsh give consent, express or implied, to having the arrest so used to suit the casino's purposes. | Plaintiff's Decl., ¶ 30. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 51. | During discovery, each deputy presented the same response to Plaintiff's Interrogatories, Set One, No. 12:<br><br>**"INTERROGATORY NO. 12:** When Hirsh was handcuffed, state each articulable fact in your possession that he had committed the crime of trespass?<br><br>**RESPONSE TO INTERROGATORY NO. 12:**<br><br>* * *<br><br>. . . upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that [sic] reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Defendant called to Mr. Hirsh, but Mr. Hirsh kept | Plaintiff's Exhibit E, Interrogatories, Set One, propounded by plaintiff on defendant Magdaleno; Plaintiff's Exhibit F, Interrogatories, Set One, propounded by plaintiff on defendant Bermudez. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
|     | feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation. |                     |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 52. | Likewise, the two deputies each answered identically the following: **"INTERROGATORY NO. 13:** State how you became aware of each articulable fact which you contend supported handcuffing Hirsh during the subject incident? **RESPONSE TO INTERROGATORY NO. 13:** * * * . . . upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that [*sic*] reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Further, upon contact with Mr. Hirsh, he was not | Plaintiff's Exhibit E, Interrogatories, Set One, propounded by plaintiff on defendant Magdaleno; Plaintiff's Exhibit F, Interrogatories, Set One, propounded by plaintiff on defendant Bermudez. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | commands. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation. As such, due to Mr. Hirsh's unpredictable behavior, his significantly larger stature, and the fact it was reported that Mr. Hirsh was trespassing, handcuffs were used to detain Mr. Hirsh pending a further investigation. | |
| 53. | Both defendants' interrogatory answers to nos. 8 and 13 were prepared for the deputies by someone other than the deputies. | Plaintiff's Exhibit G, Magdaleno Depo., 64:4-15. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 54. | The deputies were not "approached by Commerce Casino security personnel that [*sic*] reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property." According to security guard Cesenas' testimony: "Q.· When you were at the men's room door and you were talking with the deputies when they first arrived, from that moment until when they took Mr. Hirsh outside you had never spoken with the deputies about whether or not there was a trespass warning on file in the office regarding Mr. Hirsh? A.· Correct. I had not spoken to them about it. | Plaintiff's Exhibit D, Cesenas Depo., 34:5-11. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 55. | Indeed, security guard Cesenas checked the three data bases that the casino had for keeping track of barred patrons and could not find Hirsh. | Plaintiff's Exhibit D, Cesenas Depo., 73:10-20. |
| 56. | Nor did Hirsh hear a command before he had been grabbed. Nor is deputy Bermudez sure how many "commands" as opposed to requests the deputies actually uttered. | Plaintiff's Decl., ¶ 31; Plaintiff's Exhibit H, Bermudez Depo., 85:16-87:8 |
| 57. | Nor did Hirsh feign anything. | Plaintiff's Decl., ¶ 34. |
| 58. | Nor was it objectively reasonable to conclude that Hirsh was feigning anything. | Plaintiff's Decl., ¶ 34. |
| 59. | Nor did Hirsh materially delay any deputy investigation. | Plaintiff's Decl., ¶ 34; Plaintiff's Exhibits A-23, 18:14, and A-24. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 60. | As for the deputies' allegations of his purported "consciousness of guilt," as an experienced business and real estate attorney, Hirsh is very familiar with the law with respect to business invitees and trespass. At no time during that evening was he anything other than a business invitee and he never trespassed. Upon initially entering the casino, Hirsh registered with the casino and was invited to play poker at a table. | Plaintiff's Decl., ¶ 35. |
| 61. | That evening, Hirsh was self-possessed, courteous and respectful in all of his interactions with casino customers and staff, which is also reflected in each of the 31 videos lodged with the Court. | Plaintiff's Decl., ¶ 36; Plaintiff's Exhibit A-1 through A-31. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 62. | During the evening, Hirsh never interfered with the lawful operations of the casino. He never threatened any casino employee or patron. He never posed as "a danger to self or to others." He never presented as "a flight risk." Nor had he ever been previously "permanently banned" from the casino. | Plaintiff's Decl., ¶ 37; Plaintiff's Exhibit A-1 through -31. |
| 63. | Nor was Hirsh a "flight risk." | Plaintiff's Exhibit H, Bermudez Depo., 68:18-22; 69:23-70:3; 71:25-72:7; Plaintiff's Decl., ¶ 37. |
| 64. | During the evening, Hirsh never interfered with the lawful operations of the casino. He never engaged in any kind of conduct that posed a threat to any casino employee or patron. He never posed as a danger to self or to others. Nor had he been previously "permanently banned" from the casino. | Plaintiff's Decl., ¶ 38. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 65. | On several occasions that evening, Hirsh did state his view that the rule of no water bottles on the casino floor was being selectively and dishonestly enforced against him and that it, given his medical condition, violated his rights under the Americans with Disabilities Act [ADA], among other laws. | Plaintiff's Decl., ¶ 39. |
| 66. | After Hirsh was released, while still outside the casino, he had a conversation with Deputy Magdaleno who told Hirsh that this is exactly what the sheriff's department does, that he is there every night or every other night removing the casino's patrons at the casino's request. | Plaintiff's Decl., ¶ 32. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 67. | After deputy Magdaleno left, while still outside the casino, Hirsh had a conversation with casino security Lt. Eric Rodriguez. Hirsh shared with him what Deputy Magdaleno had just told him. He asked him if it was true. Lt. Rodriguez responded Yes. | Plaintiff's Decl., ¶ 33. |
| 68. | The casino, who purportedly was enforcing a County administrative order that all people within the casino wear a mask, never asked the two County deputies to mask up. Nor did the deputies see any signs warning them to wear a mask. | Plaintiff's Exhibit D, Cesenas Depo., 36:2-19; Plaintiff's Exhibit H, Bermudez Depo., 80:13-81:8; 82:24-83:5. |
| 69. | Hirsh did nothing which justified the heavy-handed retaliation that he experienced from defendant Shalin Hall's deception, so easily joined by the defendant LASD deputies Magdaleno and Bermudez who arrested him. | Plaintiff's Decl., ¶ 39. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 70. | Deputies Magdaleno and Bermudez entirely mishandled plaintiff Hirsh's call to which they were dispatched and, in the process of violating several of Hirsh's rights, violated several related LASD policies and procedures, rules which, themselves, were designed to prevent the types of deputy abuses that occurred on this evening. | Plaintiff's Expert Clark's Declaration, ¶ 4. |
| 71. | The LASD's subsequent administrative investigation of the incident was substantially and obviously deficient, and evidences the LASD's continued custom, policy and practice of failing to follow departmental review policies, procedures and practices in place so as to prevent deputy abuse of citizens' rights. | Plaintiff's Expert Clark's Declaration, ¶ 5. |

-63-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 73. | This is deficient and motivated review that deputies like Magdaleno and Bermudez rely upon to cut corners and get away with failing to faithfully execute their duties according to sound training and practice, such as during Hirsh's arrest. | Plaintiff's Expert Clark's Declaration, ¶ 5. |

-64-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 74. | The deputies' first major failure in following LASD training, rules and sound practices is that both failed to switch on their departmental issued bodycams which would have both video recorded and audio recorded the deputies' conversations with Casino staff and with Hirsh. Had they been recorded, much of the disputed testimony in the matter about what was said, who said it, to whom, and when, would likely have been resolved. Further, the videos, which are, in part, designed to help restore public confidence in the LASD, would have permitted resolution of many of these issues in a proper administrative review of the incident, something which, in this instance, did not happen. | Plaintiff's Expert Clark's Declaration, ¶ 6. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 75. | Activating both the audio and video requires the flipping of two switches. This implies four failed efforts to turn on the deputy devices that evening. Lt. Allan Healey, the lieutenant who subsequently reviewed Hirsh's government tort claim regarding the incident, subsequently took the deputies' assertion that they thought they had turned on their devices at face value without investigating whether this happened on other occasions, including the other times one of the deputies was at the Casino that day. | Plaintiff's Expert Clark's Declaration, ¶ 7. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 76. | The deputies' second major failure in following their training, procedures and sound practices is that [1] they should have obtained from California Commerce Club, Inc., Casino ["Casino"] staff whether the Casino intended to swear an arrest complaint against Hirsh and [2] who had the authority with the Casino to make that determination. This should have been done before Hirsh was handcuffed or arrested. It wasn't. | Plaintiff's Expert Clark's Declaration, ¶ 8. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 77. | In the early moments after the deputies arrived, there is an unresolved wishy-washyness to whom among Casino staff wanted Hirsh off the premises -- the Casino manager Hall or the Casino security? – and whether either had probable cause to support an arrest. This should have been resolved before the deputies arrested Hirsh. | Plaintiff's Expert Clark's Declaration, ¶ 9. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 78. | The deputies' third major failure was in failing to properly code the incident and prepare otherwise required reports, in turn, prepared reasonably contemporaneously. Combined with the fact that the deputies concede they had not thought about this incident from the time they left the Casino parking lot until, several months later, when called into Lt. Healey's office to discuss Hirsh's tort claim, further compromises the accuracy and veracity of their subsequent testimony regarding the subject incident. | Plaintiff's Expert Clark's Declaration, ¶ 10. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 79. | Regarding the coding, which the deputies are required to enter into their patrol vehicles' Mobile Digital Terminals [MDT's], the deputies failed at least 5 times. Each of the following requires the deputies to record on their respective MDT's: [1]    Any detention; [2] Any arrest;[3] Any use of force; [4]Any complaint by the subject that he was suffering pain as result of an alleged use of force; and [5]Any "backseat" detention of a subject. | Plaintiff's Expert Clark's Declaration, ¶ 11. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 80. | Each of the five miscodings would, in turn, unless expressly excused by a supervisory officer in the chain of command, require that the deputies prepare an incident report, including the deputies' factual justifications for taking each of the actions. These rules were violated. Nor did Lt. Healey, as he plainly should have, noted and investigated these violations of clear LASD rules. | Plaintiff's Expert Clark's Declaration, ¶ 11. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 81. | The deputies' fourth major failure was arresting Hirsh. If the two deputies' identical responses to interrogatories propounded on them by plaintiff are to be believed, when the deputies first handcuffed Hirsh, they thought they were making an arrest. Their subsequent effort to describe the handcuffing with Hirsh as a mode of de-escalating or because Hirsh somehow represented a threat or danger, as self-serving revisionist history. | Plaintiff's Expert Clark's Declaration, ¶ 12. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 83. | Even if the handcuffing of Hirsh was assumed, for purposes of argument, of being, rather than an arrest, a detention based upon a lower standard of "reasonable suspicion," the detention obviously morphed into an arrest when Hirsh was placed, handcuffed, and subjected to an unreported  "backseat detention" in Deputy Bermudez's patrol vehicle. There was no justification for this heavy handedness. | Plaintiff's Expert Clark's Declaration, ¶ 13. |
| 84. | The deputies' fifth major failure was abusively handcuffing Hirsh. In the mere seconds that elapsed, nothing Hirsh did justified being handcuffed, much less being handcuffed in such a way that Hirsh says caused him pain and for which he cried out. | Plaintiff's Expert Clark's Declaration, ¶ 14. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 85. | There is no valid excuse for the deputies not reporting the use of force, particularly when Hirsh cried out in pain. The deputies' assertion that Hirsh never cried out in pain or complained about the handcuffing is a factual dispute that would easily have been resolved if either deputy had, as they were required, activated their bodycams. | Plaintiff's Expert Clark's Declaration, ¶ 14. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 86. | Based upon these failures and based upon plaintiff's expert's review, the two deputies, wearing proverbially heavy badges, in a matter of seconds decided that plaintiff Hirsh had failed their attitude test. In a show of dominance, they handcuffed him for refusing to leave the casino, applied control holds and abusively and unnecessarily handcuffed him, causing him to scream in pain and suffer injury for which he required subsequent medical treatment. | Plaintiff's Expert Clark's Declaration, ¶ 15. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 87. | The deputies' initial justification for arresting plaintiff, as set forth in their discovery answers, is materially contradicted by the casino security guard handling the matter who never discussed whether a trespass warning was on file for plaintiff until the arrest had taken place and the deputies were outside. | Plaintiff's Expert Clark's Declaration, ¶ 16. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 88. | The accuracy of the deputies' memories of the facts and sequence of plaintiff's arrest is compromised by their several failures to follow LASD policies and procedures. The veracity of the deputies' accounts of their justifications for the event is further compromised by their failure in testimony to stay within the four corners of their identical discovery answers stated as all "articuable facts" in support of the handcuffing and the arrest. | Plaintiff's Expert Clark's Declaration, ¶ 17. |

-77-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|-----|---------------------------|---------------------|
| 89. | The deputies, whom the casino's security guard in charge conceded to plaintiff after the event, frequently come to the casino at the casino's request to make arrests, have developed their own mode of operating with the casino that suits their own purpose – that is to roust people they believe the casino wants out with minimum inconvenience, such as checking whether the person actually committed a crime, whether there was a valid basis for arrest, and without the bother of having to fill out reports or creating audio and video recordings, subject to supervisory review. | Plaintiff's Expert Clark's Declaration, ¶ 18. |

-78-

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 90. | The two deputies reflexively acted on vague allegations by Casino manager Hall against plaintiff in what was, in deputy Bermudez's words, "a different situation." It was that the Casino security guards – who could have arrested plaintiff and handed him over to the deputies if plaintiff had actually committed a crime – didn't want to get involved. Instead, the Casino let the deputies do the dirty work. | Plaintiff's Expert Clark's Declaration, ¶ 19. |
| 91. | That the deputies have an unduly cooperative arrangement with the Casino is further evidenced by the fact that one deputy, after confiscating plaintiff's identification, gave it to the security staff so they could conduct their own investigation on plaintiff without plaintiff's consent. | Plaintiff's Expert Clark's Declaration, ¶ 19. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 92. | The Casino manager, defendant Hall, had, plaintiff alleges and provides supporting evidence for, retaliated against Hirsh by promulgating two lies, that he violated a casino water bottle policy and that he was previously a "permanently banned" patron. The deputies, while not having spoken directly with Hall, were so casually satisfied with Hall's aims -- however those aims were communicated to the deputies – that they joined in promoting Hall's aims, doing the dirty work of arresting and expelling Hirsh. That is, to the extent Hall aimed to violate Hirsh's rights, the deputies willfully joined and satisfied Hall's aims. | Plaintiff's Expert Clark's Declaration, ¶ 20. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 93. | Finally, the LASD's deficient administrative review of what, in this instance, is a cascade of deputies failing to follow LASD training, policies and procedures, and the law, evidenced a "deliberate indifference" to respecting the rights of persons, such as Hirsh, with whom the deputies are likely to come in contact. | Plaintiff's Expert Clark's Declaration, ¶ 21. |
| 94. | In turn, this evidences a custom, policy and practice which deputies, such as Magdaleno and Bermudez, are permitted to cut corners and act abusively, with "heavy badges," without fear of administrative repercussions. In short, the deputies rely upon the LASD backing the deputies up and excusing or looking the other way regarding deputy misconduct. | Plaintiff's Expert Clark's Declaration, ¶ 21. |

-81-

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 95. | In this instance, Lt. Healey, charged with administrative investigation of Hirsh's government tort claim, prepared written notes of the two deputies' failure to activate their bodycams for purposes of their respective performance evaluations. | Plaintiff's Expert Clark's Declaration, ¶ 22. |
| 96. | Nonetheless, he failed to investigate whether that noncompliance with LASD rules was intentional or negligent. | Plaintiff's Expert Clark's Declaration, ¶ 22. |
| 97. | Further, he failed to evaluate if there was a pattern with these deputies of not recording, particularly at the Casino where both deputies frequently answered Casino calls. | Plaintiff's Expert Clark's Declaration, ¶ 22. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

| No. | ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 98. | Nor did Lt. Healey even comment on, much less investigate, the five failures to code and to provide written reports that I have noted above, obvious failures that should have jumped out from his review of Hirsh's claim. | Plaintiff's Expert Clark's Declaration, ¶ 23. |
| 99. | Nor, given the fact that the deputies had not reasonably contemporaneously reported the facts regarding the incident did Healey initiate a separate investigation into whether the deputies were giving a proper account of Hirsh's arrest. | Plaintiff's Expert Clark's Declaration, ¶ 23. |
| 100 | Lt. Healey'supervisory failures constitute deliberate indifference. This is a failure to hold the deputies accountable for their failures in the field. | Plaintiff's Expert Clark's Declaration, ¶ 23. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND SHALIN HALL**

1     DATED: June 16, 2023                          LAW OFFICES OF

2                                                  BASTIAN & DINI

3                                            *Robert L. Bastian, Jr.*

4                                            ROBERT L. BASTIAN, JR.
                                           MARINA R. DINI

5                                            Attorneys for Plaintiff
                                           ROBERT W. HIRSH

1

CERTIFICATE OF SERVICE

2

I hereby certify that on this 16th day of June, 2023, I caused to be served

3

electronically **PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF**

4

**MATERIAL FACT IN RESPONSE TO MOTION FOR SUMMARY**

5

**ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB,**

6

**INC., AND SHALIN HALL** on the following person(s):

7

Michael J. Ryan, Esq.                              mryan@sksrlawyers.com
Ani Khachatryan, Esq.                    akhachatryan@skssrlawyers.com

8

STEARNS & RYAN, Lawyers
11777 San Vicente Blvd., Suite 555

9

Los Angeles, CA  90049
Attorneys for Defendants California

10

Commerce Club, Inc. and Shalin Hall

11

Rickey Ivie, Esq.                                    rivie@imwlaw.com

12

Marina Samson, Esq.                          msamson@imwlaw.com
Ayang Inyang, Esq.                            ainyang@imwlaw.com

13

IVIE McNEILL WYATT PURCELL & DIGGS
444 S. Flower Street, Suite 1800

14

Los Angeles, California 90071
Attorneys for Defendants County of

15

Los Angeles and LASD Deputies
David Magdaleno and George Bermudez

16

17

And I hereby certify that I will mail the document by U.S. mail to the following

18

non-filing user: Not applicable.

19

20

/s/ *Robert L. Bastian, Jr.*
ROBERT L. BASTIAN JR.

21

22

23

24

END OF DOCUMENT

25

26

27

-85-

28