LAW OFFICES OF BASTIAN & DINI
ROBERT L. BASTIAN, JR. [SBN 170121]
MARINA R. DINI [SBN 169176]
9025 Wilshire Blvd., Suite 500
Beverly Hills, CA 90211
Phone:  (310) 789-1955
Fax:      (310) 822-1989
Email:   robbastian@aol.com;
            miadini@aol.com

Attorneys for plaintiff
ROBERT W. HIRSH

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. HIRSH,<br><br>                         plaintiff,<br><br>*vs.*<br><br>CALIFORNIA COMMERCE CLUB, INC., *et al.*,<br><br>                         defendants. | No. 2:22-cv-05701-MCS-AS<br><br>**DECLARATION OF ROBERT L. BASTIAN, JR., IN SUPPORT OF PLAINTIFF'S  OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC., AND SHALIN HALL;**<br><br>**PLAINTIFF'S EXHIBITS A-I**<br><br>[*Filed Concurrently With Opposition to Motion for Summary Adjudication and Statement of Genuine Disputes of Material Fact*]<br><br>Hearing Date:  July 10, 2023<br>Time:                9:00 a.m.<br>Ctrm:                7C<br><br>*Before the Honorable Mark C. Scarsi* |

# DECLARATION OF PLAINTIFF'S COUNSEL

Robert L. Bastian declares:

1.     I am partner in the Law Offices of Bastian & Dini, the attorneys of record for plaintiff Robert W. Hirsh.

2.     This declaration is made in support of plaintiff's opposition to defendants California Commerce Club, Inc., and Shalin Hall's motion for summary adjudication and defendants County of Los Angeles, Deputy David Magdaleno, and Deputy Jorge Bermudez's motion for summary judgment.

3.     I have personal knowledge of all the facts set forth herein. For those matters asserted on information or belief, I believe such statements to be true. If called and sworn as a witness, I could and would competently testify to the following:

4.     Lodged herewith as **Plaintiff's Exhibit A** are true and correct copies of 31 Casino security videos on the night of the incident, January 21, 2022, which were provided to plaintiff during discovery from defendant County of Los Angeles and defendant California Commerce Club, Inc. The Notice of Lodging filed herewith designates these 31 videos as "Exhibit A-1, Exhibit A-2 . . . Exhibit 31." I have made an effort to put these videos in temporal order, with different camera angles of the same events placed next to each other.

5.     Plaintiff's "Supporting Evidence" to his "Genuine Material Issues," particularly No. 22, gives a description to aid the viewer of what evidence plaintiff is presenting and where it is on the video.

6.     Although videos presented by the County defendants as exhibits in some instances cover the same cameras and angles, the numerical time counters at the bottom are not always in sync with the videos provided to plaintiff. So plaintiff has presented the videos separately and all video references by plaintiff are to A-1 through A-31.

7.     Attached as **Plaintiff's Exhibit B** is a true and correct copy of security incident report, dated January 21, 2022, by casino security employee Joaquin Cesenas, which was produced by defendant California Commerce Club, Inc.

8.     Attached as **Plaintiff's Exhibit C** are true and correct copies of the

-2-

transcript of defendant Shalin Hall's deposition, taken on April 28, 2023.

9.     Attached as **Plaintiff's Exhibit D** are true and correct copies of pertinent pages of the transcript casino security guard Joaquin Cesenas' deposition, taken on May 24, 2023.

10.     Attached as **Plaintiff's Exhibit E** are true and correct copies of pertinent pages [face sheet, interrogatories 8 and 12 and their answers, and the verification] of Interrogatories, Set One, propounded by plaintiff on defendant Magdaleno.

11.     Attached as **Plaintiff's Exhibit F** are true and correct copies of pertinent pages [face sheet, interrogatories 8 and 12 and their answers, and the verification] of Interrogatories, Set One, propounded by plaintiff on defendant Bermudez.

12.     Attached as **Plaintiff's Exhibit G** are true and correct copies of pertinent pages of the transcript of defendant LASD deputy David Magdaleno's deposition, taken on May 22, 2023.

13.     Attached as **Plaintiff's Exhibit H** are true and correct copies of pertinent pages of the transcript of defendant LASD deputy Jorge Bermudez's deposition, taken on May 23, 2023.

14.     Attached as **Plaintiff's Exhibit I** is s true and correct copy of the screen shot of the front page of a pamphlet bearing the shield of the LASD, entitled "Report Information and Victim's Bill of Rights," which is referenced and attested to in plaintiff Robert W. Hirsh's supporting declaration, paragraph 31.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on June 16, 2023 in Beverly Hills, California.

*Robert L. Bastian, Jr.*
Robert L. Bastian, Jr.

# PLAINTIFF'S EXHIBIT B



**Commerce Casino**

6131 East Telegraph Rd Commerce, 90040
323-721-2100 -- www.commercecasino.com

---

**SIR-22-00000138 - Barred - Start Time 01/21/2022 20:42**

| | |
|---|---|
| **Author:** Joaquin Cesenas 18714 | **Report Number:** SIR-22-00000138 |
| **Start Time:** 01/21/2022 20:42 | **End Time:** 01/21/2022 22:27 |
| **Report Group:** Casino Request | **Report Type:** Barred |
| **General Location:** Gaming Floor | **Specific Location:** Casino Service Desk |
| **Report Author:** Joaquin Cesenas | **Incident Time:** 01/21/2022 19:45 |
| **Reporting Person:** Shift manager Shalin | **Day of week:** Friday |

**Other Information**

**Narrative:** On January 21st, 2022, at approximately 1935 hours, the Security Office was contacted in regards to a possible barred patron at the Casino Service Desk. Robert Hirsh was told by Shift Manager Shalin that he was previously barred and had to leave the property. I escorted Hirsh to the Security Office to give him more information about his status and how to apply for reinstatement. I asked for his I.D. to look him up in our system but he refused to provide any identification. I then explained to him that I am unable to give him any information if he does not identify himself. Hirsh then walks out of the office, sits on an empty gaming table on the poker floor, and calls LASD himself. He then walks into the restroom by the Shift Manager's office while on the phone with 911. LASD arrived on the property and met with Hirsh by the restroom. The deputies instructed Hirsh to step outside to talk, he denied their instructions and wanted to sit on the poker floor. Deputies then grabbed Hirsh by his arm, handcuffed him, and escorted him outside to their vehicle. While in the patrol car, Hirsh requested paramedics. Deputy Bermudez contacted their dispatch for paramedics. CARE Unit 425, Engine and Paramedic 50 arrived on the property and evaluated Hirsh. Hirsh was deemed to be fine, both LAFD and CARE Unit left the property. Hirsh was uncuffed and issued a Trespass Warning Form. He refused to sign and was escorted off of the property soon after.
Hirsh was looked up in the system after the deputies provided us with his I.D. but he was not previously barred. Shalin decided to bar him for his actions. Surveillance Operator Jasmine was contacted for a review of the footage. See the linked SUR report below for further details on the incident.

| | |
|---|---|
| **VSW Interviewed:** Yes | |
| **Vehicle:** N/A | |
| **Characteristics:** Casino Service Desk | |
| **Description:** See Narrative | |
| **Technique:** N/A | |
| **Motive:** N/A | |
| **Sheriff Notified:** Yes | **Sheriff URN#:** TAG-272 |
| **FD Notified:** Yes | **FD #:** 22027586 |
| **Photos Taken:** Yes | **Video Coverage:** Yes |
| **Continuation Rpt:** No | |
| **Linked Reports:** **SUR-22-00001717** | |

# PLAINTIFF'S EXHIBIT C



In the Matter Of:

ROBERT W. HIRSH

vs

CALIFORNIA COMMERCE CLUB, INC., et al.

SHALIN HALL

April 28, 2023

Case No:  2:22-cv-05701-MCS-AS

CERTIFIED COPY

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
 1            UNITED STATES DISTRICT COURT

 2        FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ROBERT W. HIRSH,              )  CERTIFIED COPY
                                   )
 5                                 )
                Plaintiff,         )
 6                                 )
     vs.                           )Case
 7                                 )No. 2:22-cv-05701-MCS-AS
     CALIFORNIA COMMERCE CLUB,     )
 8   INC., et al.,                 )
                                   )
 9                Defendants.      )
     _____)
10

11

12

13            ZOOM DEPOSITION OF

14               SHALIN HALL

15         FRIDAY, APRIL 28, 2023

16

17

18

19

20

21

22

23   Reported by:
     Tamoi Tomlinson
24   CSR No. 13864

25
```

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

1              UNITED STATES DISTRICT COURT

2         FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4  ROBERT W. HIRSH,              )
                                 )
5                                )
              Plaintiff,         )
6                                )
   vs.                           )Case
7                                )No. 2:22-cv-05701-MCS-AS
   CALIFORNIA COMMERCE CLUB,     )
8  INC., et al.,                 )
                                 )
9              Defendants.       )
   _____)

10

11

12

13

14         ZOOM DEPOSITION OF SHALIN HALL, taken before

15  Tamoi Tomlinson, CSR No. 13864, a certified court

16  reporter for the state of California, commencing at 1:02

17  p.m., Friday, April 28, 2023.

18

19

20

21

22

23  Reported by:
    Tamoi Tomlinson
24  CSR No. 13864

25

                                                        2



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
                A P P E A R A N C E S
 2   For Plaintiff:
 3            LAW OFFICES OF BASTIAN & DINI
              BY: ROBERT L. BASTIAN, JR.
 4            Attorney at Law
              9025 Wilshire Boulvard
 5            Suite 500
              Beverly Hills, California 90211
 6            (310)789-1955
              robbastian@aol.com
 7
 8
 9   For Defendants California Commerce Club,
     Inc., and Shalin Hall:
10
              STEARNS KIM STEARNS & RYAN
11            BY: MICHAEL J. RYAN
              Attorney at Law
12            11777 San Vicente Boulvard
              Suite 555
13            Los Angeles, California 90049
              (310)424-1424
14            mryan@sksrlawyers.com
15
16
     For Defendants County of Los Angeles and
17   LASD Deputies David Magdaleno and George Bermudez:
18            IVIE MCNEILL WYATT PURCELL & DIGGS
              BY: AYANG INYANG
19            Attorney at Law
              444 South Flower Street
20            Suite 1800
              Los Angeles, California 90071
21            (213)-489-0028
              ainyang@imwlaw.com
22
23
24
25
```
3



**Plaintiff Hirsh's Exhibits, p. 10 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
 1                    I N D E X

 2   WITNESS:   SHALIN HALL

 3

 4   EXAMINATION                              PAGE

 5   BY: MR. BASTIAN                             6

 6   BY: MR. INYANG                            163

 7   BY: MR. BASTIAN                           170

 8

 9

10

11                  MARKED TESTIMONY

12   LINE                                    PAGE

13

14                      (NONE)

15

16

17

18

19

20

21

22

23

24

25
```

4

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
1                    E X H I B I T S

2    EXHIBIT    DESCRIPTION                        PAGE

3         1    Video footage                       36

4         2    Security report                     44

5         3    Video footage                       56

6         4    Video footage                       62

7         5    Video footage                       73

8         6    Video footage                       81

9         7    Video footage                       96

10        8    Video footage                       98

11        9    Video footage                      102

12       10    Video footage                      103

13       11    Security report                    110

14

15

16

17

18

19

20

21

22

23

24

25
                                                      5
```



**Plaintiff Hirsh's Exhibits, p. 12 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
1                      FRIDAY, APRIL 28, 2023
2                           1:02 P.M.
3                            -oOo-
4                         SHALIN HALL,
5           called as a witness on behalf of Plaintiff,
6  having been administered an oath in accordance with
7  C.C.P. Section 2094, was examined and testified as
8  follows:
9                         EXAMINATION
10 BY MR. BASTIAN:
11     Q    Good afternoon, everybody.  My name is Robert
12 Bastian.  Good afternoon, Ms. Hall.  Thank you,
13 Ms. Hall, for participating in these discovery
14 procedures.  First is a matter of formality, can you
15 state and spell your name for the record?
16     A    Shalin Hall; S-h-a-l-i-n H-a-l-l.
17     Q    Have you ever had your deposition taken before?
18     A    No.
19     Q    We're going to go over some basic ground rules
20 about the process and how it works here so that you are
21 fully informed going forward.  Obviously, there's a
22 certain formality in these proceedings.  I didn't
23 introduce myself yet.  I'm Robert Bastian.  I'm the
24 attorney for the plaintiff in this lawsuit that we're
25 here for.  And your counsel is here representing you.
```

6

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

1    during his conversations with you that night regarding

2    Mr. Hirsh?

3        A    Did he tell me what?

4        Q    That Hirsh -- they looked Hirsh up in the

5    system and that he had not previously been barred?

6        A    Yeah.  They said that they didn't find his name

7    previously.

8        Q    Okay.  And in the next sentence is, "Shalin

9    decided to bar him for his actions."  Is that statement

10   correct?

11       A    Decide to bar him for his actions, yes. And

12       Q    his actions were not wearing a mask and

13   also having a bottle by the floor?

14       A    Correct.

15       Q    Okay.  And then the next sentence is,

16   "Surveillance Operator Jasmine was contacted for a

17   review of the footage."  Do you know a Surveillance

18   Operator Jasmine?

19       A    Yes.

20       Q    And did you ever talk to Surveillance Operator

21   Jasmine about Mr. Hirsh?

22       A    I don't recall.

23       Q    Did anybody ever confirm seeing him without a

24   mask on the night of the evening on January 1st, 2022,

25   [sic] while he was on the floor?

46

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
1          MR. RYAN:  I'm sorry.  Can I have that question
2    read back?
3          MR. BASTIAN:  Forget it.  Let me restate the
4    question.
5    BY MR. BASTIAN:
6      Q    Was there ever any effort made to point to the
7    specific time when Mr. Hirsh had violated the county's
8    mask requirement?
9          MR. RYAN:  Objection.  Vague and ambiguous.
10   BY MR. BASTIAN:
11     Q    You can answer.
12     A    Can you repeat that question?
13     Q    Was there ever an effort made to identify the
14   specific time and place when Hirsh was violating the
15   county's mask mandate, prior to him being banned?
16         MR. RYAN:  Same objection.
17         THE WITNESS:  I'm sorry.  Does that mean I'm
18   answering or not?
19         MR. RYAN:  To the extent you can, go ahead and
20   answer.
21         THE WITNESS:  I know that I didn't.  I can't
22   account for anyone else.
23   BY MR. BASTIAN:
24     Q    Did you ever put in a report, the specific time
25   and place, where he had violated the mask mandate?
```

47

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

 1      A    I did not write a report.  No.

 2      Q    Did anybody ever ask you to tell when -- what

 3  his specific actions were that were resulting in him

 4  being banned?

 5      A    Yes.

 6      Q    Who?

 7      A    Security, when they asked why he was being

 8  barred.

 9      Q    And did they ever ask you, either on that

10  evening or subsequently, to provide the specific time

11  and location when Hirsh was purportedly in violation of

12  the mask mandate?

13      A    Location, yes; time, I don't recall.

14      Q    Moving to the water bottle.  Is it your

15  contention that having a water bottle on the floor, by

16  his feet, was a violation of the county's COVID

17  mandates?

18           MR. RYAN:  I'm going to object, at least the

19  way it's framed.  You can perhaps rephrase it, but I

20  can't have the party contention in the deposition, so

21  I'm going to instruct her not to answer that.

22  BY MR. BASTIAN:

23      Q    Let me rephrase the question.

24           Was it your understanding that having a bottle

25  of water by his feet violated the rules?

48

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

1    A    Yes.

2    Q    Is that a rule that Commerce Casino Club

3 enforced regularly, routinely?

4         MR. RYAN:  Objection.  Vague and ambiguous.

5 BY MR. BASTIAN:

6    Q    You can answer.

7    A    During that particular time when we had the

8 exact mandates that we had that day from the health

9 department, beverage and food were not allowed on the

10 gaming floor.

11   Q    My question, though, is did -- did Commerce

12 Casino Club enforce that rule uniformly at that time?

13        MR. RYAN:  Objection.  Vague and ambiguous.

14        You can answer if you understand the question.

15 If you don't understand, again, you can tell him that,

16 but unless I instruct you and say "don't answer," you do

17 have to answer the question.

18        THE WITNESS:  Can you explain what you mean by

19 "uniformly"?

20 BY MR. BASTIAN:

21   Q    Yeah.  Your entire career -- part of your job

22 has been to enforce rules on casino floors; correct?

23   A    Yes.

24   Q    And even as a dealer, you had to abide by

25 certain rules; right?

49

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
 1      A    No.

 2      Q    But it is an employee, based on his dress;

 3  correct?

 4      A    Yes.

 5      Q    And starting the tape again, she walked right

 6  past him; correct?

 7      A    Correct.

 8      Q    Running the tape.  Continuing now.  Now he's

 9  leaving the floor area, correct, at 03:48?

10      A    Correct.

11      Q    He's drinking right at the top of the stairs,

12  04:02; correct?

13      A    Yes.

14      Q    Is that permitted, drinking there?

15      A    As I stated before, I don't recall about the

16  hallway.  Only the gaming floor.  You couldn't drink on

17  the gaming floor.

18      Q    Well, who is responsible for enforcing those

19  rules?

20      A    Employees.

21      Q    And who did they answer to?

22      A    Supervisors and management.

23      Q    Isn't that you?

24      A    I'm one of the managers.  Yes.

25      Q    So aren't you responsible for knowing what the
```

87

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

 1  rules are?

 2      A    Yes.

 3      Q    You don't know what the rules were on that

 4  particular day?

 5      A    I can't remember what all of the rules were on

 6  that particular day.  No.  On that particular day I knew

 7  the rules.

 8      Q    Would it be fair to say that those are rules

 9  that you're enforcing against Mr. Hirsh on that

10  particular day?

11          MR. RYAN:  Objection.

12          THE WITNESS:  No, because those patrons didn't

13  drink.

14  BY MR. BASTIAN:

15      Q    If I understand you correctly then, it's okay

16  now to have a water bottle on the floor on

17  January 1st -- 22nd [sic], as long as you don't drink?

18      A    I don't recall.

19      Q    Would that be an important rule to know if

20  you're going to be enforcing it against somebody?

21          MR. RYAN:  You mean today or at the time?

22          THE WITNESS:  All rules are important at the

23  time.

24  BY MR. BASTIAN:

25      Q    Moving on.  Going to 17:02.  I'm going to move

88

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

1   proceedings.  My client and I, we have some strong

2   disagreements about the substance of this lawsuit, but

3   there's no denying that you --

4           MR. RYAN:  Okay.  I don't need you -- hold on.

5   I don't need you to make any speeches.  If we're done

6   with this deposition, we're done.  Appreciate it, but

7   thank you.

8           MR. BASTIAN:  Are you going to make any

9   instructions?

10          MR. RYAN:  We're done with the deposition.

11  You're not allowed to sit here and talk to my client

12  about disagreements that you have.  If you have

13  questions for her in a deposition format, okay.  But I'm

14  not going to have you sit here and talk to my client

15  about your disagreements in this case.  She is a

16  defendant here, and you don't have the right to talk to

17  my client.

18          MR. BASTIAN:  Deposition is done.  Thank you.

19  And thank you, Ms. Tomlinson.

20          THE COURT REPORTER:  Counsel -- Mr. Ryan, will

21  you be requesting a transcript?

22          MR. RYAN:  Yes.

23          MR. BASTIAN:  Is it agreeable, Counsel, that

24  there's going to be a Drop Box, and then I'll send all

25  the exhibits over on Monday for the preparation of the

174

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
 1  transcript?
 2            MR. RYAN:  Okay.
 3            MR. INYANG:  Ms. Tomlinson, I would also like
 4  to order a transcript.
 5            THE COURT REPORTER:  Okay.
 6            MR. BASTIAN:  And thanks again, Ms. Hall.  I
 7  appreciate your participation today.  Thank you so much.
 8                 (Whereupon the proceedings were concluded
 9                 at 6:35 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

175



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Shalin Hall on 04/28/2023

```
 1   STATE OF CALIFORNIA    )
     COUNTY OF ORANGE       )
 2

 3            I, TAMOI TOMLINSON, Certified Shorthand Reporter,

 4   License No. 13864, for the State of California, do hereby

 5   certify:

 6            That, prior to being examined, the witness

 7   named in the foregoing deposition SHALIN HALL, was by

 8   me duly sworn to testify the truth, the whole truth,

 9   and nothing but the truth;

10            That the testimony of the witness, the

11   questions propounded, and all objections and statements

12   made at the time of the examination were recorded

13   stenographically by me and were thereafter transcribed;

14            Further, that if the foregoing pertains to the

15   original transcript of a deposition in a federal case,

16   pursuant to F.R.C.P. 30(e)(2) before completion of the

17   proceedings, review of the transcript  __ was XX_ was

18   not requested.

19            I further certify that I am not a relative or

20   employee of any attorney of the parties, nor

21   financially interested in the action.

22            I declare under penalty of perjury under the

23   laws of California that the foregoing is true and

24   correct.
                                Tamoi Tomlinson
25
```

www.regalcourtreporting.com
866-228-2685

REGAL

**Plaintiff Hirsh's Exhibits, p. 22 of 126**

# PLAINTIFF'S EXHIBIT D



In the Matter Of:

ROBERT W. HIRSH

vs

CALIFORNIA COMMERCE CLUB, INC., et al.

JOAQUIN CESENAS

May 24, 2023

Case No:  2:22-CV-05701-MCS-AS

CERTIFIED COPY

Case 2:22-cv-05701-MCS-AS    Document 41-4    Filed 06/16/23    Page 25 of 126   Page
ID #:819
ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

1                  UNITED STATES DISTRICT COURT

2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4   ROBERT W. HIRSH,              )
                                  )
5                  plaintiff,     )
                                  )
6   vs.                           )   No. 2:22-CV-05701-MCS-AS
                                  )
7   CALIFORNIA COMMERCE CLUB,     )
    INC., et al.,                 )
8                                 )
                   defendants.    )
9   - - - - - - - - - - - - - - -

10

11

12

13

14

15      VIDEOCONFERENCE DEPOSITION OF JOAQUIN CESENAS

16              WEDNESDAY, MAY 24, 2023

17                  PAGES 1 - 105

18

19                  CERTIFIED COPY

20

21

22

23

24  STENOGRAPHICALLY REPORTED BY:

25  AIMEE EDWARDS-ALTADONNA, RPR, CSR No. 13979



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1

 2

 3

 4

 5

 6

 7

 8

 9              Videoconference deposition of JOAQUIN CESENAS,

10   taken on behalf of PLAINTIFF, all parties appearing from

11   remote locations, commencing at 12:39 p.m., WEDNESDAY,

12   MAY 24, 2023, before Aimee Edwards-Altadonna, Certified

13   Shorthand Reporter No. 13979, pursuant to notice.

14

15

16

17

18

19

20

21

22

23

24

25
```

2



**Plaintiff Hirsh's Exhibits, p. 26 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1   APPEARANCES OF COUNSEL:

 2

 3       FOR PLAINTIFF:

 4       LAW OFFICES OF BASTIAN & DINI

 5       By: ROBERT L. BASTIAN, ATTORNEY AT LAW

 6       By: MARINA R. DINI, ATTORNEY AT LAW

 7       9025 Wilshire Boulevard, Suite 500

 8       Beverly Hills, California 90211

 9       Telephone: 310.789.1955

10       Email: robbastian@aol.com

11       Email: miadini@aol.com

12

13       FOR DEFENDANTS CALIFORNIA COMMERCE CLUB, INC.

14       and SHALIN HALL:

15       STEARNS KIM STEARNS & RYAN

16       By: MICHAEL J. RYAN, ATTORNEY AT LAW

17       By: ANI KHACHATRYAN, ATTORNEY AT LAW

18       11777 San Vicente Boulevard, Suite 555

19       Los Angeles, California 90049

20       Telephone: 310.424.1424

21       Email: mryan@sksrlawyers.com

22       Email: akhachatryan@sksrlawyers.com

23

24

25
```

3



**Plaintiff Hirsh's Exhibits, p. 27 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1   APPEARANCES OF COUNSEL:

 2

 3       FOR DEFENDANTS COUNTY OF LOS ANGELES and LASD

 4       DEPUTIES DAVID MAGDALENO and GEORGE BERMUDEZ:

 5       IVIE McNEILL WYATT PURCELL & DIGGS

 6       By: AYANG INYANG, ATTORNEY AT LAW

 7       444 South Flower Street, Suite 1800

 8       Los Angeles, California 90071

 9       Telephone:  213.489.0028

10       Email: ainyang@imwlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1                        INDEX

 2   WEDNESDAY, MAY 24, 2023

 3   JOAQUIN CESENAS                                Page

 4       Examination By Mr. Bastian                    7

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

REGAL

**Plaintiff Hirsh's Exhibits, p. 29 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1                        EXHIBITS

 2                    JOAQUIN CESENAS

 3   Number           Description              Page

 4   Exhibit 1    Video file "B - Casino         34

 5                Services" (25.3 MB)

 6   Exhibit 2    Video file "Security Office    34

 7                (A)" (10.1 MB)

 8   Exhibit 3    Video file "Hold'em PTZ75"     40

 9                (117.1 MB)

10   Exhibit 4    Video file "Top PTZ68" (1.2 MB) 53

11   Exhibit 5    Surveillance Reports,          58

12                Bates-stamped CC PRIV-000001 -

13                CC PRIV-000006 (6 pages)

14   Exhibit 6    Video file "G - Lot 6 SEC      78

15                PTZ 10" (1000.2 MB)

16   Exhibit 7    Video file "H - Lot 6 SEC PTZ  92

17                10" (874.2 MB)

18

19

20

21

22

23

24

25
```

6

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1               WEDNESDAY, MAY 24, 2023; 12:39 p.m.
 2                     JOAQUIN CESENAS,
 3        having first been sworn testified as follows:
 4                        EXAMINATION
 5   BY MR. BASTIAN:
 6        Q.  Good afternoon.  Could you state your name and
 7   spell it for the record, please.
 8        A.  Joaquin Cesenas.  First name is J-O-A-Q-U-I-N;
 9   last name, C-E-S-E-N-A-S.
10        Q.  Thank you for participating in the proceedings
11   with us here today.
12             Are you on duty right now?
13        A.  Yes.
14        Q.  Okay.
15             If we need to take breaks because you have
16   obligations, we'll work with you on that.
17        A.  Okay.  Thank you.
18             My radio is completely off; so ...
19        Q.  Okay.
20             Have you ever had your deposition taken before?
21        A.  No.
22        Q.  So what I'd like to start with is some ground
23   rules and some admonitions and these are rules that we
24   tell everybody.  So this is typically how it starts.
25             First of all, obviously you've just taken an
```

7

REGAL

**Plaintiff Hirsh's Exhibits, p. 31 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1          MR. RYAN:  I object as vague and ambiguous to
 2   whatever we're talking about now.
 3   BY MR. BASTIAN:
 4      Q.  You know what we're talking about; right?
 5          MR. RYAN:  Objection.
 6   BY MR. BASTIAN:
 7      Q.  You can answer.
 8      A.  What was the question?
 9      Q.  The question is to your knowledge, was the
10   information that Ms. Hall provided to you that he had
11   been evicted on a prior occasion -- was that accurate?
12      A.  No.
13      Q.  Okay.
14          And you know that because you checked to make
15   sure that -- in order to determine whether or not he had
16   been evicted; correct?
17      A.  I was able to check after he had provided ID.
18      Q.  When was the first time -- well, who provided
19   the ID to you?
20      A.  The sheriff's department.
21      Q.  Did you ask the sheriff's department to provide
22   the ID to you?
23      A.  I don't remember.
24      Q.  Do you know if the sheriff's department asked
25   for Mr. Hirsh's consent to give his ID to you?
```

22

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

1      A.   I don't remember.

2      Q.   Y+ou received the ID out in the -- in the

3    parking lot after the deputies had taken him outside;

4    correct?

5      A.   Yes.

6      Q.   And then you walked back to the office with the

7    ID; is that correct?

8      A.   I don't remember.

9      Q.   Well, how else would you have checked whether

10   or not his ID matched somebody that had been previously

11   evicted without going back to the office?

12     A.   At that point I don't check.  I just gather the

13   information needed for that incident report of that day.

14     Q.   Okay.

15          Well, so after you gathered that information,

16   you gave the identification back to the sheriff's

17   deputies?

18     A.   His ID card, yes.

19     Q.   Okay.

20          In subsequent conversation that night that you

21   had with the sheriff's deputies, did you indicate to

22   them that you had checked and that he had been

23   previously barred?

24          MR. RYAN:  Hold on.

25          Can I have that question read back?

23

REGAL

Plaintiff Hirsh's Exhibits, p. 33 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

1  upper left-hand corner where Mr. Hirsh and two deputies

2  are walking and a security guard.

3          And after you've had a chance to watch that,

4  the first thing I'm going to ask you is if that's you,

5  the security guard.  Okay?

6      A.  Okay.

7          (Video played.)

8  BY MR. BASTIAN:

9      Q.  Now it's running.

10         Okay.  The video is completed.  It ran for one

11  minute.  It stopped on the final clip and there's a

12  security guard with a mask on with a bottle in his right

13  hand, a water bottle that he picked up from Mr. -- from

14  the floor.

15         Do you recognize that security guard as you?

16     A.  Yes.

17     Q.  Okay.

18         Were you able to hear the conversation that was

19  going on between Mr. Hirsh and two deputies at that

20  time?

21     A.  I don't remember.

22     Q.  Did you ever hear any of -- of the deputies say

23  that -- that Mr. Hirsh was a trespasser?

24     A.  I can't recall.  I don't remember.

25     Q.  Did you ever hear -- did you hear Mr. Hirsh say

25

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

1  that he wanted to go talk to the deputies down at one of

2  the vacant poker tables or words to those effect?

3      A.  Yes.

4      Q.  Did it appear that the deputies didn't want him

5  to go down to those tables?

6          MR. INYANG:  I'm going to object to the extent

7  that it calls for speculation.

8          You obviously can respond.

9  BY MR. BASTIAN:

10     Q.  Did it appear to you based upon what you were

11 seeing and what you were hearing that the deputies would

12 not allow him to go down to the table to speak?

13     A.  They instructed him to go outside and talk.

14     Q.  Prior to the deputies arriving, at any time did

15 you see Mr. Hirsh actually sitting down at one of those

16 tables and talking on the telephone?

17     A.  Yes.

18     Q.  And did you hear any of that conversation that

19 he had?

20     A.  Yes.

21     Q.  And were you aware that he was calling 911;

22 correct?

23     A.  Yes.

24     Q.  And was he complaining that he was being

25 followed around by security guards at the casino?

26

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1  room when the deputies first arrived; correct?
 2         MR. RYAN:  I'm sorry.  Rather than object, can
 3  you just rephrase that because it got very confusing.
 4  BY MR. BASTIAN:
 5     Q.  When you were at the men's room door and you
 6  were talking with the deputies when they first arrived,
 7  from that moment until when they took Mr. Hirsh outside
 8  you had never spoken with the deputies about whether or
 9  not there was a trespass warning on file in the office
10  regarding Mr. Hirsh?
11     A.  Correct.  I had not spoken to them about it.
12     Q.  Okay.  Thank you.  Thank you.
13         I'm going to bring up another exhibit; so bear
14  with me while I fight the technology.
15         THE STENOGRAPHER:  And just for clarification,
16  sir, I don't believe we marked the first video as an
17  exhibit officially on the record.
18         MR. BASTIAN:  We'll make that Exhibit 1.
19         (Exhibit 1 was marked.)
20         MR. BASTIAN:  Okay.  Can everybody see this
21  video clip?
22         THE WITNESS:  Yes.
23         MR. BASTIAN:  Okay.  This we're going to mark
24  as Exhibit 2.
25         (Exhibit 2 was marked.)
```

34

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1          Okay.  Did you have a chance to watch the
 2  entire 41 seconds of that video?
 3      A.  Yes.
 4      Q.  Okay.
 5          Do you see yourself cut -- you escorted -- you
 6  escorted Mr. Hirsh there; correct?
 7      A.  I walked in front of him, yes.
 8      Q.  Okay.
 9          And you walked behind a desk; correct?
10      A.  Yes.
11      Q.  And were you looking for anything behind the
12  desk?
13      A. I don't remember what I was doing.
14      Q.  Okay.
15          What was your purpose for walking with
16  Mr. Hirsh to the -- the security office?
17      A.  To help provide him with information on how to
18  go about the situation at hand.
19      Q.  Okay.
20          I'm going to change topics for just a moment
21  and then we're going to get back to the security office.
22          All the security officers in that office are
23  wearing a mask; correct?
24      A.  Yes.
25      Q.  And you were wearing a mask as well; correct?
```

36

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1   Club & Hotel of who was a barred patron?
 2        A.  Yes.
 3        Q.  What is that?
 4        A.  They're -- throughout the years, they've
 5   changed databases.
 6        Q.  When you say "they," you're talking about the
 7   security department?
 8      A.  Yes.
 9      Q.  Okay.
10         But is it a database that's -- is there more
11   than one database in the security department that covers
12   barred patrons?
13           A.  Yes.
14           Q.  How many are there?
15           A.  To my knowledge three.
16           Q.  Were all three checked in the case
17        of Mr. Hirsh?
18      A.  Yes.
19      Q.  And did all three come back negative?
20      A.  Yes.
21      Q.  Okay.
22         Are you familiar -- are you aware of any other
23   databases regarding barred patrons?
24      A.  I'm unaware of any others.
25      Q.  The three databases, can you describe why there
```

73

REGAL

Plaintiff Hirsh's Exhibits, p. 38 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

1        Q.   I believe so too, but let me run this tape

2   through to make sure.

3            (Video played.)

4   BY MR. BASTIAN:

5        Q.   Okay.   That tape is over and I'm going to stop

6   it now.

7            MR. BASTIAN:   I don't have anything further

8   with this witness at this point.

9            Mr. Inyang?

10           MR. INYANG:   I have no questions.

11           MR. BASTIAN:   Mr. Ryan?

12           MR. RYAN:   None from me.

13           MR. BASTIAN:   All right.   Thank you, sir, for

14  participating in what we think are important

15  proceedings.

16           I need to go off record because we need to

17  discuss a couple things.

18           (Off the record:  3:29 p.m. to 3:30 p.m.)

19           THE STENOGRAPHER:   I did need to ask if any

20  other attorney other than Mr. Bastian would like to

21  purchase a deposition transcript today.

22           MR. INYANG:   I'll take a copy.

23           MR. RYAN:   We'll take one too.

24           (Off the record:  3:30 p.m.)

25

                                                    102

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
Joaquin Cesenas on 05/24/2023

```
 1              CERTIFICATE OF STENOGRAPHIC REPORTER
 2        I certify that the witness in the foregoing remote
 3   deposition, JOAQUIN CESENAS, was by me duly sworn in
 4   remotely to testify in the within-entitled cause; that
 5   said deposition was taken remotely at the time therein
 6   named; that the testimony of said witness was
 7   stenographically reported by me, a duly Certified
 8   Shorthand Reporter of the State of California authorized
 9   to administer oaths and affirmations, and said testimony
10   was thereafter transcribed into typewriting to the best
11   of my ability via remote teleconferencing.
12        I further certify that I am not of counsel or
13   attorney for either or any of the parties to said
14   deposition, nor in any way interested in the outcome of
15   the cause named in said deposition.
16        The dismantling, unsealing, or unbinding of the
17   original transcript will render the Reporter's
18   Certificate null and void.
19        IN WITNESS WHEREOF, I have hereunto set my hand this
20   2nd day of June, 2023.
21
22
23   *Aimee Edwards Altadonna*
24   AIMEE EDWARDS-ALTADONNA, RPR
     Certified Shorthand Reporter
25   Certification No. 13979
```

105

# PLAINTIFF'S EXHIBIT E

**RICKEY IVIE, ESQ. (SBN 76864)**
rivie@imwlaw.com
**MARINA SAMSON, ESQ. (SBN 315024)**
msamson@imwlaw.com
**AYANG INYANG, ESQ. (SBN 339484)**
ainyang@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:  (213) 489-0552

Attorneys for Defendant,
**COUNTY OF LOS ANGELES; LASD DEPUTY DAVID MAGDALENO; and
LASD DEPUTY GEORGE BERMUDEZ**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. HIRSH, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>CALIFORNIA COMMERCE CLUB, INC., dba COMMERCE CASINO & HOTEL; SHALIN HALL; COUNTY OF LOS ANGELES; LASD DEPUTY DAVID MAGDALENO [Badge No. 533970]; LASD DEPUTY GEORGE BERMUDEZ [Badge No. 648049]; and DOES 1 through10, inclusive,<br><br>        Defendants. | CASE NO.: 2−22−cv−05701−MCS−AS<br>Complaint Filed:    July 12, 2022<br><br><br>**DEFENDANT DEPUTY DAVID MAGDALENO'S RESPONSES TO PLAINTIFF'S INTERROGATORIES**<br><br>**(SET ONE)** |

**PROPOUNDING PARTY:**     **Plaintiff, ROBERT HIRSH**

**RESPONDING PARTY:**     **Defendant, DEPUTY DAVID MAGDALENO**
**SET NO.:**     **ONE**

TO: PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN:
                    INTRODUCTORY STATEMENTS

 The following general comments and objections apply to each and every document request and are specifically are incorporated by reference into each and every Response as though set forth in full therein.

 1. Responses are based on documents currently known to Defendant COUNTY OF LOS ANGELES (hereinafter "Defendant" or "Responding Party"). Defendant reserves the right to supplement these responses if additional documents become known to it.

 2. Defendant does not waive any objections as to the admissibility of evidence, competency of, relevancy of, materiality of or privilege attaching to any document produced. Defendant also does not waive the right to object to other discovery requests or undertakings involving or reflecting the subject matter of documents requested herein. No response or production in response to these requests constitutes or should be construed as an admission respecting relevancy of admissibility of any document or the truth or accuracy of any statement, characterization or other information contained in any document. Defendant expressly does not concede the relevancy or materiality of any of these requests or the subject matter to which they refer.

 3. Nothing contained herein or produced in response to the request herein consists of or should be construed as an admission relative to the existence or non-existence of any document. Responses consenting to produce responsive documents

and without waiving the foregoing objection, Defendant responds as follows: no.

**INTERROGATORY NO . 11:**

　　If you did not prepare an incident report during the subject incident, why didn't you?

**RESPONSE TO INTERROGATORY NO. 11:**

　　Objection. This Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: an incident report was not prepared because there was no arrest made during the incident.

**INTERROGATORY NO. 12:**

　　When Hirsh was handcuffed, state each articulable fact in your possession that he had committed the crime of trespass?

**RESPONSE TO INTERROGATORY NO. 12:**

　　Objection. This request is vague, ambiguous, unintelligible, overbroad, oppressive, and unduly burdensome in time, scope, and substance. Subject to, and without waiving the foregoing objections, Defendant responds as follows: upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation.

**INTERROGATORY NO. 13:**

　　State how you became aware of each articulable fact which you contend supported handcuffing Hirsh during the subject incident?

**RESPONSE TO INTERROGATORY NO. 13:**

　　Objection. This request is vague, ambiguous, unintelligible, overbroad,

oppressive, and unduly burdensome in time, scope, and substance. Subject to, and without waiving the foregoing objections, Defendant responds as follows: upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Further, upon contact with Mr. Hirsh, he was not complying with Defendant's commands. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation. As such, due to Mr. Hirsh's unpredictable behavior, his significantly larger stature, and the fact it was reported that Mr. Hirsh was trespassing, handcuffs were used to detain Mr. Hirsh pending a further investigation.

## INTERROGATORY NO. 14:

Have you been contacted by the Federal Bureau of Investigation in connection with any investigation of any aspect of the Los Angeles Sheriff's Department or its functioning?

## RESPONSE TO INTERROGATORY NO. 14:

Objection. This Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: no.

## INTERROGATORY NO . 15:

[If yes to Interrogatory No. 14] state the name of the person contacting you, the time and the nature of the contact.

## RESPONSE TO INTERROGATORY NO. 15:

N/A

## INTERROGATORY NO. 16:

Have you ever used California Commerce Club Hotel and Casino facilities or played any games at their casino in your private time?

**RESPONSE TO INTERROGATORY NO. 16:**

Objection. This Interrogatory is vague, ambiguous, unintelligible, overbroad, oppressive, and unduly burdensome in time, scope, and substance. Further objection as this Interrogatory is not reasonably calculated to lead to the discovery of relevant and admissible evidence. Further objection as this Interrogatory pertains to information subject to rights of privacy and confidentiality with no reasonable, relevant topical and/or temporal limitations. Further objection as this Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: no.

**INTERROGATORY NO. 17:**

[If yes to Interrogatory no. 17], state approximately when?

**RESPONSE TO INTERROGATORY NO. 17:**

N/A

**INTERROGATORY NO. 18:**

[If yes to Interrogatory no. 18.] approximately how often?

**RESPONSE TO INTERROGATORY NO. 18:**

N/A

Dated:  May 8, 2023                    **IVIE McNEILL WYATT PURCELL & DIGGS**

                              **By:    /s/ Ayang Inyang**
                                       **RICKEY IVIE, ESQ.**
                                       **MARINA SAMSON, ESQ.**
                                       **AYANG J. INYANG, ESQ.**
                                       Attorneys for Defendants,
                                       **COUNTY OF LOS ANGELES, LASD DEPUTY DAVID MAGDALENO; and LASD DEPUTY GEORGE BERMUDEZ**

## **VERIFICATION**

I have read the foregoing RESPONSES OF DEFENDANT DEPUTY DAVID MAGDALENO TO PLAINTIFF'S INTERROGATORIES, SET ONE and know its contents.  I am the Defendant in this Proceeding. The matters stated in the foregoing document are true of my own knowledge except as to the matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing are true and correct. Executed this ___5ᵗʰ___ day of May, 2023 in Los Angeles, California.

Deputy David Magdaleno

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 444 South Flower Street, Suite 1800, Los Angeles, California, 90071.

    On **May 8, 2023** I served the foregoing document described as the **DEFENDANT DEPUTY DAVID MAGDALENO'S RESPONSES TO PLAINTIFF'S INTERROGATORIES (SET ONE)**on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes as addressed on the service list:

### SEE ATTACHED MAILING LIST

**[ ]**    **BY PERSONAL DELIVERY**: I caused such document to be delivered by hand to the addressee with delivery time prior to 5:00 pm on the date specified above.

**[ X ]**    **BY MAIL**: I caused such envelope to be deposited in the mail at Los Angeles, California, with first class postage thereon fully prepaid. I am readily familiar with the business practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service on that same day, at Los Angeles, California, in the Ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in affidavit.

**[X ]**    **Email:** See attached service list.

[√]    (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on **May 8, 2023,** Los Angeles, California.

                  */s/Francine Stinnett*
                  **FRANCINE STINNETT**

## <u>SERVICE LIST</u>

Robert L. Bastian, Jr., Esq.          Attorneys for Plaintiff
Marina R. Dini, Esq.                   **ROBERT W. HIRSH**
LAW OFFICES OF BASTIAN & DINI
9025 Wilshire Blvd., Suite 500
Beverly Hills, CA 90211
Telephone:    (310) 789-1955
Facsimile:     (310) 822-1989

Email: robbastian@aol.com
         miadini@aol.com

Michael J. Ryan, Esq.          Attorneys for Defendants
Danielle N. Duarte, Esq.        **CALIFORNIA COMMERCE CLUB,**
STEARNS KIM STEARNS & RYAN  **INC. AND SHALIN HALL**
11777 San Vicente Blvd, Suite 300
Santa Monica, CA 90401
Telephone: (310) 424-1424
Facsimile: (310) 424-1425

Email: mryan@sksrlawyers.com
         dduarte@skssrlawyers.com

PLAINTIFF'S EXHIBIT F

**RICKEY IVIE, ESQ. (SBN 76864)**
rivie@imwlaw.com
**MARINA SAMSON, ESQ. (SBN 315024)**
msamson@imwlaw.com
**AYANG INYANG, ESQ. (SBN 339484)**
ainyang@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:  (213) 489-0552

Attorneys for Defendant,
**COUNTY OF LOS ANGELES; LASD DEPUTY DAVID MAGDALENO; and LASD DEPUTY GEORGE BERMUDEZ**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. HIRSH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA COMMERCE CLUB, INC., dba COMMERCE CASINO & HOTEL; SHALIN HALL; COUNTY OF LOS ANGELES; LASD DEPUTY DAVID MAGDALENO [Badge No. 533970]; LASD DEPUTY GEORGE BERMUDEZ [Badge No. 648049]; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2-22-cv-05701-MCS-AS<br>Complaint Filed:    July 12, 2022<br><br><br>**DEFENDANT DEPUTY GEORGE BERMUDEZ'S RESPONSES TO PLAINTIFF'S INTERROGATORIES**<br><br>**(SET ONE)** |

**PROPOUNDING PARTY:**    **Plaintiff, ROBERT HIRSH**

**RESPONDING PARTY:**    **Defendant, DEPUTY GEORGE BERMUDEZ**
**SET NO.:**    **ONE**

**TO**: **PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN:**
**INTRODUCTORY STATEMENTS**

The following general comments and objections apply to each and every
document request and are specifically are incorporated by reference into each and
every Response as though set forth in full therein.

1.    Responses are based on documents currently known to Defendant
COUNTY OF LOS ANGELES (hereinafter "Defendant" or "Responding Party").
Defendant reserves the right to supplement these responses if additional documents
become known to it.

2.    Defendant does not waive any objections as to the admissibility of
evidence, competency of, relevancy of, materiality of or privilege attaching to any
document produced.  Defendant also does not waive the right to object to other
discovery requests or undertakings involving or reflecting the subject matter of
documents requested herein.   No response or production in response to these
requests constitutes or should be construed as an admission respecting relevancy of
admissibility of any document or the truth or accuracy of any statement,
characterization or other information contained in any document.   Defendant
expressly does not concede the relevancy or materiality of any of these requests or
the subject matter to which they refer.

3.    Nothing contained herein or produced in response to the request herein
consists of or should be construed as an admission relative to the existence or non-
existence of any document.  Responses consenting to produce responsive documents

and without waiving the foregoing objection, Defendant responds as follows: no.

**INTERROGATORY NO . 11:**

If you did not prepare an incident report during the subject incident, why didn't you?

**RESPONSE TO INTERROGATORY NO. 11:**

Objection. This Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: an incident report was not prepared because there was no arrest made during the incident.

**INTERROGATORY NO. 12:**

When Hirsh was handcuffed, state each articulable fact in your possession that he had committed the crime of trespass?

**RESPONSE TO INTERROGATORY NO. 12:**

Objection. This request is vague, ambiguous, unintelligible, overbroad, oppressive, and unduly burdensome in time, scope, and substance. Subject to, and without waiving the foregoing objections, Defendant responds as follows: upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation.

**INTERROGATORY NO. 13:**

State how you became aware of each articulable fact which you contend supported handcuffing Hirsh during the subject incident?

**RESPONSE TO INTERROGATORY NO. 13:**

Objection. This request is vague, ambiguous, unintelligible, overbroad,

oppressive, and unduly burdensome in time, scope, and substance. Subject to, and without waiving the foregoing objections, Defendant responds as follows: upon arrival to Commerce Casino, Defendant was approached by Commerce Casino security personnel that reported that Mr. Hirsh was trespassing and that a Trespass Warning Form/PC 602 Letter was on file regarding Mr. Hirsh's bar from Commerce Casino's property. Further, upon contact with Mr. Hirsh, he was not complying with Defendant's commands. Defendant called to Mr. Hirsh, but Mr. Hirsh kept walking away from defendant feigning like he had not heard defendant which suggested a consciousness of guilt and obstructed, delayed defendant's investigation. As such, due to Mr. Hirsh's unpredictable behavior, his significantly larger stature, and the fact it was reported that Mr. Hirsh was trespassing, handcuffs were used to detain Mr. Hirsh pending a further investigation.

**INTERROGATORY NO. 14:**

Have you been contacted by the Federal Bureau of Investigation in connection with any investigation of any aspect of the Los Angeles Sheriff's Department or its functioning?

**RESPONSE TO INTERROGATORY NO. 14:**

Objection. This Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: no.

**INTERROGATORY NO . 15:**

[If yes to Interrogatory No. 14] state the name of the person contacting you, the time and the nature of the contact.

**RESPONSE TO INTERROGATORY NO. 15:**

N/A

**INTERROGATORY NO. 16:**

Have you ever used California Commerce Club Hotel and Casino facilities or played any games at their casino in your private time?

**RESPONSE TO INTERROGATORY NO. 16:**

Objection. This Interrogatory is vague, ambiguous, unintelligible, overbroad, oppressive, and unduly burdensome in time, scope, and substance. Further objection as this Interrogatory is not reasonably calculated to lead to the discovery of relevant and admissible evidence. Further objection as this Interrogatory pertains to information subject to rights of privacy and confidentiality with no reasonable, relevant topical and/or temporal limitations. Further objection as this Interrogatory assumes facts and lacks foundation. Subject to, and without waiving the foregoing objection, Defendant responds as follows: no.

**INTERROGATORY NO. 17:**

[If yes to Interrogatory no. 17], state approximately when?

**RESPONSE TO INTERROGATORY NO. 17:**

N/A

**INTERROGATORY NO. 18:**

[If yes to Interrogatory no. 18.] approximately how often?

**RESPONSE TO INTERROGATORY NO. 18:**

N/A

Dated:  May 8, 2023            **IVIE McNEILL WYATT**
                               **PURCELL & DIGGS**

                        **By:**  ***/s/Ayang Inyang***_____
                               **RICKEY IVIE, ESQ.**
                               **MARINA SAMSON, ESQ.**
                               **AYANG J. INYANG, ESQ.**
                               Attorneys for Defendants,
                               **COUNTY OF LOS ANGELES, LASD DEPUTY DAVID MAGDALENO; and LASD DEPUTY GEORGE BERMUDEZ**

## VERIFICATION

I have read the foregoing RESPONSES OF DEFENDANT DEPUTY GEORGE BERMUDEZ TO PLAINTIFF'S INTERROGATORIES, SET ONE and know its contents. I am the Defendant in this Proceeding. The matters stated in the foregoing document are true of my own knowledge except as to the matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing are true and correct. Executed this __8__ day of May, 2023 in Los Angeles, California.

Deputy George Bermudez

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 444 South Flower Street, Suite 1800, Los Angeles, California, 90071.

On **May 8, 2023** I served the foregoing document described as the **DEFENDANT DEPUTY GEORGE BERMUDEZ 'S RESPONSES TO PLAINTIFF'S INTERROGATORIES (SET ONE)**on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes as addressed on the service list:

### SEE ATTACHED MAILING LIST

[ ]    **BY PERSONAL DELIVERY**: I caused such document to be delivered by hand to the addressee with delivery time prior to 5:00 pm on the date specified above.

[ X ]    **BY MAIL**:  I caused such envelope to be deposited in the mail at Los Angeles, California, with first class postage thereon fully prepaid. I am readily familiar with the business practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service on that same day, at Los Angeles, California, in the Ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in affidavit.

[ X ]  **Email:** See attached service list.

[✓]    (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 8, 2023,** Los Angeles, California.

*/s/Francine Stinnett*
**FRANCINE STINNETT**

## <u>SERVICE LIST</u>

| | |
|---|---|
| Robert L. Bastian, Jr., Esq. | Attorneys for Plaintiff |
| Marina R. Dini, Esq. | **ROBERT W. HIRSH** |
| LAW OFFICES OF BASTIAN & DINI | |
| 9025 Wilshire Blvd., Suite 500 | |
| Beverly Hills, CA 90211 | |
| Telephone:    (310) 789-1955 | |
| Facsimile:    (310) 822-1989 | |

Email: robbastian@aol.com
        miadini@aol.com

| | |
|---|---|
| Michael J. Ryan, Esq. | Attorneys for Defendants |
| Danielle N. Duarte, Esq. | **CALIFORNIA COMMERCE CLUB,** |
| STEARNS KIM STEARNS & RYAN | **INC. AND SHALIN HALL** |
| 11777 San Vicente Blvd, Suite 300 | |
| Santa Monica, CA 90401 | |
| Telephone: (310) 424-1424 | |
| Facsimile: (310) 424-1425 | |

Email: mryan@sksrlawyers.com
       dduarte@skssrlawyers.com

# PLAINTIFF'S EXHIBIT G



In the Matter Of:

ROBERT W. HIRSH

vs

CALIFORNIA COMMERCE CLUB, INC., et al.

DAVID ANDREW MAGDALENO

May 22, 2023

Case No:  2:22-cv-05701-MCS-AS

CERTIFIED COPY

Case 2:22-cv-05701-MCS-AS    Document 41-4    Filed 06/16/23    Page 61 of 126    Page ID #:855
ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    ROBERT W. HIRSH,                )
                                      )
 6               Plaintiff,           )
                                      )
 7    vs.                             )Case No.:
                                      )2:22-cv-05701-MCS-AS
 8    CALIFORNIA COMMERCE CLUB,       )
      INC., et al.,                   )
 9                                    )
                 Defendants.          )
10    _____)

11

12

13                  CERTIFIED COPY

14

15

16

17               DEPOSITION OF:

18          DAVID ANDREW MAGDALENO

19            Monday, May 22, 2023

20

21

22

23
      Stenographically reported by:
24
      Haley Dawn Westra
25    CSR No. 14483
```



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    ROBERT W. HIRSH,                )
                                      )
 6              Plaintiff,            )
                                      )Case No.:
 7    vs.                             )2:22-cv-05701-MCS-AS
                                      )
 8    CALIFORNIA COMMERCE CLUB,       )
      INC., et al.,                   )
 9                                    )
                Defendants.           )
10    _____)

11

12

13

14

15

16

17          THE DEPOSITION OF DAVID ANDREW MAGDALENO,

18    taken on behalf of the Plaintiff, before Haley Dawn

19    Westra, Certified Shorthand Reporter 14483, for the

20    State of California, commencing at 1:04 p.m., Monday,

21    May 22, 2023, via videoconference.

22

23

24

25
```

2

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:

 4          LAW OFFICES OF BASTIAN & DINI
            BY:  Mr. Robert L. Bastian, Jr., Esq.
 5               Ms. Marina R. Dini, Esq.
            9025 Wilshire Boulevard, Suite 500
 6          Beverly Hills, California  90211
            robbastian@aol.com, 310-789-1955
 7          miadini@aol.com, 310-789-1955

 8
      FOR THE DEFENDANTS CALIFORNIA COMMERCE CLUB, INC. AND
 9    SHALIN HALL:

10          STEARNS KIM STEARNS & RYAN
            BY:  Mr. Michael J. Ryan, Esq.
11               Ms. Ani Khachatryan, Esq.
            11777 San Vicente Boulevard, Suite 555
12          Los Angeles, California  90049
            mryan@sksrlawyers.com, 310-424-1424
13          akhachatryan@skssrlawyers.com, 310-424-1424

14

15    FOR THE DEFENDANTS COUNTY OF LOS ANGELES AND LASD
      DEPUTIES DAVID MAGDALENO AND GEORGE BERMUDEZ:
16
            IVIE MCNEILL WYATT PURCELL & DIGGS
17          BY:  Mr. Ayang Inyang, Esq.
            444 South Flower Street, Suite 1800
18          Los Angeles, California  90071
            ainyang@imwlaw.com, 213-489-0028
19

20

21

22

23

24

25
```

3



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1                    I N D E X

 2

 3  WITNESS                                    PAGE

 4  DAVID ANDREW MAGDALENO

 5       EXAMINATION BY MR. BASTIAN JR.        6

 6       EXAMINATION BY MR. INYANG             132

 7

 8                  E X H I B I T S

 9

10  EXHIBIT            DESCRIPTION          INTRODUCED

11  EXHIBIT 1    Los Angeles County Sheriff's    19
                 Department FOSS Newsletter
12               18-07 - Sheriff's Automated
                 Contact Reporting (SACR) System
13
    EXHIBIT 2    8/29/22 Deputy Daily Worksheet  20
14               0952

15  EXHIBIT 3    8/29/22 Deputy Daily Worksheet  33
                 0953
16
    EXHIBIT 4    5-09/5210.10 - Backseat         40
17               Detentions

18  EXHIBIT 5    Defendant Deputy David          45
                 Magdaleno's Responses to
19               Plaintiff's Interrogatories
                 (Set One)
20
    EXHIBIT 6    Video                           49
21
    EXHIBIT 7    Video                           54
22
    EXHIBIT 8    3-06/200.08 - Body Worn         78
23               Cameras-Activation

24  EXHIBIT 9    3-06/200.40 - Training Required 83

25  EXHIBIT 10   Video                           85
                                                   4
```

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

| | | | |
|---|---|---|---|
| 1 | EXHIBIT 11 | Video | 90 |
| 2 | EXHIBIT 12 | Video | 91 |
| 3 | EXHIBIT 13 | Video | 92 |
| 4 | EXHIBIT 14 | Video | 92 |
| 5 | EXHIBIT 15 | Video | 123 |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

5

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1                 Monday, May 22, 2023, 1:04 p.m.

 2                    Los Angeles, California

 3

 4                 DAVID ANDREW MAGDALENO,

 5    a witness herein, having been first duly sworn by the

 6    Certified Reporter to speak the truth and nothing but

 7    the truth, was examined and testified as follows:

 8

 9

10    BY MR. BASTIAN JR.:

11        Q.   Good afternoon, Mr. Magdaleno.  Thank you for

12    being here today.

13        A.   Good afternoon.

14        Q.   Have you ever had your deposition taken

15    before?

16        A.   No.

17        Q.   Okay.  I'd like to go over some ground rules.

18             First of all, you know that you're defended in

19    this lawsuit among other defendants; correct?

20        A.   Yes.

21        Q.   And you've had a chance to see the complaint

22    in the first amended complaint; correct?

23        A.   Yes.

24        Q.   My name is Robert Bastian.  And I'm

25    representing the plaintiff in this case.  I'll be
```

6

REGAL

**Plaintiff Hirsh's Exhibits, p. 66 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1    Q.    Something else happened at 1952?

2    A.    It's the acknowledge en route 97.

3    Q.    Well, wouldn't 1948 be acknowledged en route?

4    A.    I believe those are going to be the assigned

5    because he was assigned the call versus I was the

6    assistant.

7         So if you scroll up, it'll be on the very top.

8         "Dispatch acknowledged en route."

9    Q.    And "1097" means?

10   A.    That's when he manually pressed that he was at

11   the location.

12   Q.    I see.

13        And 1098 is when he was reportedly finished?

14   A.    That's when he manually pressed that he was

15   finished with that incident.

16   Q.    Well, he left the casino the same time you

17   did; isn't that right?

18   A.    According to those times, no; but when we left

19   at the same time -- the actual time of us being there,

20   yes, we left at the same time.

21   Q.    Well, both of you left earlier than the times

22   that actually were -- either on his or your sheet --

23were included; right?

24   A.    I believe so.

25   Q.    Under "CLR," it says "948 [sic] no SACR

35

REGAL

Plaintiff Hirsh's Exhibits, p. 67 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1    reports required."

2         Explain that to me.  What does that mean?

3    A.   940, and it goes all the way up to 949.

4         Well, 940 specifically states, "No SACR report

5    required."

6    Q.   Is that something that he typed in?

7    A.   That's something that he manually typed in.

8    It's the actual code itself, the 940, and the verbiage

9    is automatically put up, put in.

10   Q.   Prior to you leaving the scene, did he ever

11   have a conversation with you as to whether or not an

12   SACR would be required?

13   A.   Not that I can recall.

14   Q.   Were you surprised that no SACR was prepared

15   regarding this incident?

16        MR. INYANG:  Objection.  Vague and ambiguous

17   and argumentative.

18        You can go ahead and respond.

19        THE WITNESS:  Can you repeat the question?

20   BY MR. BASTIAN JR.:

21   Q.   Were you surprised that an SACR was not

22   required regarding this incident?

23   A.   Yes.

24   Q.   Why is that?

25   A.   Due to the fact that we did detain him during

36

**Plaintiff Hirsh's Exhibits, p. 68 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1    our investigation, a SACR, by definition, is required.
 2        Q.    Did you ever have a conversation with Deputy
 3    Bermudez as to why he didn't do the required report?
 4            MR. INYANG:  The same objection.
 5            But you can go ahead and respond.
 6            THE WITNESS:  As of today, I was unaware that
 7    he did not do one.
 8    BY MR. BASTIAN JR.:
 9        Q.    Well, typically, when somebody prepares an
10    incident report like that, don't they corroborate with
11    the assisting officer to get that person's
12    observations?
13            MR. INYANG:  I'm going to object to the extent
14    that that misstates previous testimony.
15            We're talking about the SACR, and we're -- and
16    your question is about an incident report, so I'm going
17    to object on that basis that it's vague and ambiguous.
18            But if you understand what he's asking, go
19    ahead and respond.
20            THE WITNESS:  Repeat the question.
21            MR. BASTIAN JR.:  I listened carefully to that
22    objection, and I think there is a basis of that, so I'm
23    going to rephrase any question and ask it a little bit
24    more clearly.
25
```
37

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1   BY MR. BASTIAN JR.:
 2       Q.   We're going to come back to this exhibit but
 3   bear with me.  I'm going to put a new exhibit up.
 4            MR. BASTIAN JR.:  Can everybody see what I'm
 5   about ready to tag as Exhibit 4, "Backseat Detentions"?
 6            MR. INYANG:  Yes, we can see.
 7            (Deposition Exhibit No. 4 was marked for
 8   identification by the reporter.)
 9   BY MR. BASTIAN JR.:
10       Q.   I'm going to read one sentence at a time and
11   ask some questions.
12            "A backseat detention" -- I'm reading from the
13   first sentence.
14            "A backseat detention occurs when an
15   individual's freedom is restrained by placing that
16   individual in the backseat of a patrol car for
17   investigative purposes for any period of time."
18            Now I'll stop to ask a question.
19            That happened in this case, didn't it?
20       A.   Yes.
21       Q.   He was there for at least 15 minutes, if not
22   more; correct?
23       A.   From what I can remember, yes.
24       Q.   The second sentence, "Backseat detentions
25   shall not be used except when the deputy has
```

40

REGAL

**Plaintiff Hirsh's Exhibits, p. 70 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1   individualized reasonable suspicion that justifies a

 2   detention and an articulable reasonable belief that the

 3   detained person may pose a threat of physical harm or

 4   is an escape risk unless detained in the backseat."

 5           Regarding that second sentence, you agree that

 6   that's the policy of the Los Angeles Sheriff's

 7   Department; right?

 8      A.   Yes.

 9      Q.   And that is based upon the law as you've been

10   trained; correct?

11      A.   Yes.

12      Q.   "Backseat detentions" -- I'm moving down to

13   the next sentence.

14           "Backseat detentions are not permitted when

15   based on unreasonable or factually unsupported

16   assertions of deputy safety"; correct?

17      A.   Yes.

18      Q.   Going down to the bottom paragraph, it

19   provides for contact codes to document all backseat

20   detentions on the deputy's daily worksheet; correct?

21      A.   Yes.

22      Q.   Now, you don't disagree that this is the

23   policy of the sheriff's department; correct?

24      A.   Yes.

25      Q.   Yes, the way you answered, as a formal matter,
```

41

REGAL

**Plaintiff Hirsh's Exhibits, p. 71 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1    I need to clean that.

2            You do not disagree that this is the policy of

3    the sheriff's department; correct?

4      A.    Yes.

5      Q.    Okay.   And it says here that all backseat

6    detentions need to be on a daily worksheet; correct?

7            A.    Yes.

8            Q.    And that didn't happen here, did it?

9            A.    On Deputy Bermudez's, I believe not.

10           Q.    Well, it didn't happen on yours
     either;

11     correct?

12     A.    He wasn't in the backseat of my vehicle.

13     Q.    But you witnessed it; correct?

14     A.    Yes.   And by the handling deputy, he's the

15   only one that could place that in his work log.

16     Q.    Where is the rule set down that he's the only

17   one that can put that down?

18     A.    When it comes to putting those codes, those

19   940 codes, only the handling unit could put the 940

20   code, 941, 942.

21           The assisting unit can only put that they

22   assisted, which is a 780.   We are not able to put 940

23   codes.

24     Q.    Why not?   Is there a rule against it, or is

25   there an electronic reason you can't?   Why can't you?

                                                              42

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1          MR. INYANG:  I'm going to object to the extent

2    that it calls for speculation.

3          But you can go ahead and answer that if you

4    know.

5       THE WITNESS:  Yes, the computer will not allow

6    it.

7    BY MR. BASTIAN JR.:

8       Q.   The last sentence says "The factual

9    justification for the backseat detention 'seizure'

10   shall be articulated in the narrative portion of the

11   deputy's log."

12          Do you see that?

13      A.   Yes.

14      Q.   And that doesn't appear in Deputy Bermudez's

15   daily log, does it?

16      A.   No.

17      Q.   And for reasons that you just explained, it

18   didn't appear in yours either?

19      A.   Yes.

20      Q.   And until today, you didn't know that there

21   was a separate requirement for backseat detentions;

22   correct?

23          MR. INYANG:  I'm going to object.  Misstates

24   testimony.

25          But you can go ahead and respond to that.

                                                        43

REGAL

**Plaintiff Hirsh's Exhibits, p. 73 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
1              THE WITNESS:  Can you repeat the question?
2    BY MR. BASTIAN JR.:
3        Q.   Until today, until this issue got brought up,
4    you didn't know that there was a separate SACRs
5    reporting requirement for backseat detentions; correct?
6        A.   I was aware that when you clear a call, and
7    you're the handling unit, you have to put it in your
8    log clearance and also a SACR clearance.
9    BY MR. BASTIAN JR.:
10       Q.   But were you also aware that there was a
11   separate clear for backseat detentions?
12       A.   As far as -- can you explain a little more,
13   please?
14       Q.   Well, isn't the purpose of this to produce a
15   record of why somebody was backseat-detained so it can
16   be reviewed by supervisory staff to see whether or not
17   the sheriff's department is complying with its
18   regulations and the law?
19             MR. INYANG:  I'm going to object to the extent
20   that it calls for speculation.
21             But you can go ahead and respond.
22             THE WITNESS:  Yes.
23   BY MR. BASTIAN JR.:
24       Q.   That didn't happen here, though, did it?
25       A.   Not in Deputy Bermudez's log, no.
```

44

REGAL

**Plaintiff Hirsh's Exhibits, p. 74 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1  the tables -- there's a series of tables on the floor
 2  of the casino there that are empty; correct?
 3       A.   Yes.
 4       Q.   And he wanted to sit down and talk with you
 5  there; correct?
 6       A.   I believe so, yes.
 7       Q.   And he actually signaled that that's where he
 8  was going, and he wanted you to follow him so that he
 9  could talk to you?
10       A.   Yes.
11       Q.   And you're telling me that you handcuffed him
12  to make -- put him at ease?
13       A.   Well, to feel -- well, not only to put him at
14  ease, to take him away from security because my main
15  goes was to secure him for our safety and his safety
16  due to his erratic nature.
17            But I also escorted him out of the casino for
18  him being in fear of the security guards.
19       Q.   Well, the only security guard that was with
20  him when you two officers arrived was this gentleman at
21  the bottom of the screen who picked up his water
22  bottle; right?
23     A.   Yes.
24       Q.   So if he called you in order to protect him
25    from security guards, what was wrong with the option of
```

56

REGAL

Plaintiff Hirsh's Exhibits, p. 75 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1   talking to them at that table?

2       A.    Due to his erratic nature, not following our

3   instructions, and the call stating that he might be

4   under the influence of a narcotic and/or alcohol, and

5   based on his reaction towards us, not following our

6   directions, that's why I wanted to detain him and

7   escort him out of the building.

8       Q.    I don't remember -- okay.  Hold on a second.

9   I'm going to take this exhibit off.

10          We're going to go back to -- I believe it's

11  Exhibit 5.

12          We're back at your discovery responses;

13  correct?

14      A.    Yes.

15      Q.    And one of the questions you were asked was

16  when Hirsh -- number 12, "When Hirsh was handcuffed,

17  state each articulable fact in your possession that he

18  had committed the crime of trespass."

19          And then, in number 13, "State how you became

20  aware of each articulable fact which you contend

21  supported handcuffing Hirsh during the subject

22  incident?"

23      A.    Mm-hmm.

24      Q.    You didn't mention anything there about him

25  being potentially under the influence of alcohol or

57

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1    BY MR. BASTIAN JR.:

 2      Q.   Can you see that?

 3      A.   Yes.

 4      Q.   The last sentence to your response to number

 5   12, "Defendant called to Mr. Hirsh, but Mr. Hirsh kept

 6   walking away from defendant feigning like he had not

 7   heard defendant which suggested a consciousness of

 8   guilt and obstructed, delayed defendant's

 9   investigation"; correct?

10      A.   Yes.

11      Q.   Are those your words?

12      A.   Yes.

13      Q.   Or did somebody prepare those for you?

14      A.   I did not write this specifically, so that

15   I -- I'm unsure of.

16      Q.   And you reviewed your answers before you

17   signed them under penalty of perjury; right?

18      A.   Yes.

19      Q.   And did you ever review Deputy Bermudez's

20   responses to the same interrogatories?

21      A.   No.

22      Q.   Would you be surprised to find out that they

23   are word for word the same?

24      A.   No.

25      Q.   Well, in that answer, it says "Defendant
```

64

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1          THE WITNESS:  Yes, they were not on.

2    BY MR. BASTIAN JR.:

3       Q.   And that's something that you were told;

4    correct?

5       A.   Can you re- -- explain the question?

6       Q.   Well, when did you first find out that there

7    was no activated audio or video from either yours or

8    Bermudez's camera regarding this incident?

9       A.   By Lieutenant Healey.

10      Q.   So he told you he had checked; correct?

11      A.   Yes.

12      Q.   So let's go through the process a little bit

13   here.

14          When you start your shift, you pick up a body

15   worn camera; correct?

16      A.   Yes.

17      Q.   And the body worn camera is taken out of a --

18   it's an Axon.  Is that the correct product?

19      A.   Yes.

20      Q.   And it's taken out of a row, and it's put

21   there at the end of the shift; correct?

22      A.   Yes.

23      Q.   And when you put it at the end of the shift,

24   it automatically downloads the prior stops; correct?

25      A.   Yes.

79

REGAL

**Plaintiff Hirsh's Exhibits, p. 78 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
 1   west entry; is that right?

 2     A.   Yes.

 3     Q.   Followed by a security guard wearing a mask

 4   and holding Mr. Hirsh's bottle of water; right?

 5     A.   Yes.

 6     Q.   Okay.   And you also saw him stumble there?

 7     A.   Yes.

 8     Q.   What was the conversation that took place
     at
 9   the time that he stumbled, as you recall?

10         MR. INYANG:   Objection.   Lacks foundation.

11         You can go ahead and respond.

12         THE WITNESS:   I don't recall.

13   BY MR. BASTIAN JR.:

14     Q.   Okay.   I'm going to move to another clip.

15   This is going to be a 29-second clip that's entitled

16   "West Entry Drive 83."

17         MR. BASTIAN JR.:   We'll make this next in

18   order.

19         THE REPORTER:   This will be 12.

20         (Deposition Exhibit No. 12 was marked for

21   identification by the reporter.)

22   BY MR. BASTIAN JR.:

23     Q.   Do you recognize you and Bermudez escorting

24   Mr. Hirsh out of the building in this clip?

25     A.   Yes.
```

91

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1              Do you recall when you made the determination
2      as to put Mr. Hirsh in the backseat of Deputy
3      Bermudez's patrol vehicle?
4          A.   Once we arrived to the vehicle.
5          Q.   Okay.  And what was the reasoning behind
6      placing him in the backseat of the patrol vehicle?
7          A.   Well, based on our investigation, everything
8      that happened prior, and that's when he notified us
9      that he was having chest complications and having
10     trouble to breathe.
11             MR. INYANG:  That's all.  I don't have any
12     further questions.
13             MR. BASTIAN JR.:  Mr. Ryan?
14             MR. RYAN:  Nothing from him.
15             MR. BASTIAN JR.:  Thank you, Deputy.  I know
16     these are tough situations, but we do acknowledge your
17     professionalism and participation in these proceedings.
18             These are how we resolve issues like this and
19     hopefully improve the world.
20             So thank you.
21             Do we have anything -- oh, are we confirmed
22     for tomorrow at 1:00?
23             MR. INYANG:  Yes, on my end.
24             MR. BASTIAN JR.:  Okay.  Good.
25             THE REPORTER:  And just really quick, if the

133

REGAL

**Plaintiff Hirsh's Exhibits, p. 80 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

1  | attorneys will please put their order of the transcript

2  | on the record, please.

3  |         MR. INYANG:  I would like a copy of the

4  | transcript.

5  |         MR. BASTIAN JR.:  Yeah, of course, we want the

6  | original.  Yes.

7  |         MR. RYAN:  I will let you know.  I can't

8  | commit to getting one at this time.

9  |         (4:52 p.m.)

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

134

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
David Andrew Magdaleno on 05/22/2023

```
1    STATE OF CALIFORNIA    )
     COUNTY OF ORANGE       )
2

3             I, Haley Dawn Westra, Certified Shorthand Reporter,

4    License No. 14483, for the State of California, do hereby

5    certify:

6             That, prior to being examined, the witness

7    named in the foregoing deposition DAVID ANDREW MAGDALENO,

8    was by me duly sworn to testify the truth, the whole truth,

9    and nothing but the truth;

10            That the testimony of the witness, the

11   questions propounded, and all objections and statements

12   made at the time of the examination were recorded

13   stenographically by me and were thereafter transcribed;

14            Further, that if the foregoing pertains to the

15   original transcript of a deposition in a federal case,

16   pursuant to F.R.C.P. 30(e)(2) before completion of the

17   proceedings, review of the transcript  XX_ was __ was

18   not requested.

19            I further certify that I am not a relative or

20   employee of any attorney of the parties, nor

21   financially interested in the action.

22            I declare under penalty of perjury under the

23   laws of California that the foregoing is true and

24   correct.
                              Haley Dawn Westra
25                            _____
```

136



# PLAINTIFF'S EXHIBIT H



In the Matter Of:

ROBERT W. HIRSH

vs

CALIFORNIA COMMERCE CLUB, INC., et al.

GEORGE BERMUDEZ

May 23, 2023

Case No:  2:22-cv-05701-MCS-AS

CERTIFIED COPY

Case 2:22-cv-05701-MCS-AS    Document 41-4    Filed 06/16/23    Page 85 of 126    Page ID #:879
ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA


ROBERT W. HIRSH,                    )
                                    )
            Plaintiff,              )
                                    )
        vs.                         )   Case No.
                                    )   2:22-cv-05701-MCS-AS
CALIFORNIA COMMERCE CLUB, INC.,     )
et al.,                             )
                                    )
            Defendants.             )
_____)

**CERTIFIED COPY**




DEPOSITION OF:

GEORGE BERMUDEZ

Via Zoom Videoconference

Wednesday, May 23, 2023




Stenographically Reported by:
January Dawn Allen
CSR No. 13748

Job No. 38163



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1                    UNITED STATES DISTRICT COURT

 2                FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    ROBERT W. HIRSH,                  )
                                        )
 6                   Plaintiff,         )
                                        )
 7          vs.                         )   Case No.
                                        )   2:22-cv-05701-MCS-AS
 8    CALIFORNIA COMMERCE CLUB, INC., )
      et al.,                           )
 9                                      )
                     Defendants.        )
10    _____)

11

12

13

14

15

16

17

18

19            DEPOSITION OF GEORGE BERMUDEZ, taken on behalf

20    of the Plaintiff, conducted via Zoom videoconference,

21    reported remotely from Orange County, California,

22    commencing at 1:09 p.m., Wednesday, May 23, 2023, before

23    January Dawn Allen, Certified Shorthand Reporter

24    No. 13748 for the State of California.

25
```

2



ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1    APPEARANCES OF COUNSEL (ALL PARTIES APPEARING REMOTELY):

 2

 3         For the Plaintiff:

 4              LAW OFFICES OF BASTIAN & DINI
                BY:  ROBERT L. BASTIAN, JR., ESQ.
 5                   MARINA R. DINI, ESQ.
                9025 Wilshire Boulevard
 6              Suite 500
                Beverly Hills, California  90211
 7              (310) 789-1955
                robbastian@aol.com
 8              miadini@aol.com

 9

10         For the Defendants COUNTY OF LOS ANGELES and LASD
           DEPUTIES DAVID MAGDALENO and GEORGE BERMUDEZ:

11              IVIE McNEILL WYATT PURCELL & DIGGS
                BY:  AYANG INYANG, ESQ.
12              444 South Flower Street
                Suite 1800
13              Los Angeles, California  90071
                (213) 489-0028
14              ainyang@imwlaw.com

15

16         For the Defendants CALIFORNIA COMMERCE CLUB, INC.
           and SHALIN HALL:

17              STEARNS KIM STEARNS & RYAN
                BY:  ANI KHACHATRYAN, ESQ.
18              11777 San Vicente Boulevard
                Suite 555
19              Los Angeles, California  90049
                (310) 424-1424
20              dduarte@sksrlawyers.com

21

22

23

24

25
```

3

**Plaintiff Hirsh's Exhibits, p. 87 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1              I N D E X

 2            EXAMINATIONS

 3   WITNESS                                       PAGE

 4   GEORGE BERMUDEZ

 5       Examination By MR. BASTIAN ................... 8

 6

 7

 8

 9

10              EXHIBITS

11   NUMBER        DESCRIPTION                      PAGE

12   Exhibit 1     Deputy Daily Worksheet            24

13   Exhibit 2     Video                            54

14   Exhibit 3     Defendant California Commerce Club,  80
                   Inc. Supplemental Responses to
15                 Plaintiff's Request for Production
                   Set One
16
     Exhibit 4     Video                            89
17
     Exhibit 5     Video                            89
18
     Exhibit 6     Video                           103
19
     Exhibit 7     Video                           128
20

21

22

23

24

25
```

4

Case 2:22-cv-05701-MCS-AS    Document 41-4    Filed 06/16/23    Page 89 of 126    Page ID #:883
ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1                    I N D E X  (CON'T)

 2            WITNESS INSTRUCTED NOT TO ANSWER

 3                      PAGE        LINE

 4                       42          13

 5                       42          25

 6                       43           6

 7                       43          18

 8                       44           3

 9                       44           8

10                       44          13

11                       44          18

12                       45           5

13                       45          11

14                       45          16

15                       45          20

16                       45          24

17                       46           6

18                       46          12

19                       46          18

20                       48           8

21                       48          14

22                       49           1

23                       49           6

24                       49          11

25                       49          16
```

5

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
1              I N D E X  (CON'T)

2          WITNESS INSTRUCTED NOT TO ANSWER

3                  PAGE        LINE

4                    71          8

5                   101         23

6                   110         11

7                   122         16

8                   123         17

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

6



**Plaintiff Hirsh's Exhibits, p. 90 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
1                    Wednesday, May 23, 2023
2                    Via Zoom Videoconference
3                         1:09 p.m.
4                          -o0o-
5    PLEASE BE ADVISED THAT THE DISMANTLING, UNSEALING, OR
6    UNBINDING OF THE ORIGINAL TRANSCRIPT WILL RENDER THE
7        STENOGRAPHER'S CERTIFICATION NULL AND VOID.
8                          -o0o-
9         MR. BASTIAN:  My name is Robert Bastian.  I'm
10   representing the plaintiff, Robert Hirsh, in this
11   matter.  I anticipate somewhere in the next 30 minutes,
12   my law partner Marina Dini will also come on, but she's
13   not on right now.
14        MR. INYANG:  And then it's Ayang Inyang on
15   behalf of the County of Los Angeles and Deputy David
16   Magdaleno and Deputy Jorge Bermudez.
17        MS. KHACHATRYAN:  Ani Khachatryan on behalf of
18   Defendant Commerce Casino and Defendant Shalin Hall.
19        THE LICENSED STENOGRAPHER:  Deputy, if you
20   would please raise your right hand, and I'll swear you
21   in now.
22        (Witness sworn.)
23        THE WITNESS:  I do.
24        THE LICENSED STENOGRAPHER:  Thank you so much.
25        You may proceed, Counsel.
```

7

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    Automated Contract Reporting system; correct?

2        A.    Yes, sir.

3        Q.    And you had a daily activity log for this

4    particular case; correct?

5        A.    That is correct, sir.

6        Q.    Okay.  And you've reviewed that?

7        A.    I have, sir.

8        Q.    What other documents have you reviewed in

9    preparation for your deposition here today?

10       A.    The documents provided by my attorney, sir.

11       Q.    Okay.  And what documents are those?

12       A.    The complaints --

13       Q.    Okay.

14       A.    -- in this case.

15       Q.    Okay.  Anything else?

16       A.    The deputy daily worksheet and the activity

17   log.

18       Q.    Okay.  Anything else?

19       A.    I would have to refer to the documents, sir.  I

20   can't remember from the top of my head.

21       Q.    Okay.  Have you reviewed any of the videotapes

22   of the casino?

23       A.    I have, sir.

24       Q.    Okay.  When was the last time you reviewed the

25   video?

23

REGAL

**Plaintiff Hirsh's Exhibits, p. 92 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1        A.    Today.   A portion of it.

 2        Q.    The portion where you're on; correct?

 3        A.    Yes, sir.

 4        Q.    Okay.  All right.  I'm going to ask everybody

 5   to indulge me for about ten seconds because I'm going to

 6   present the first exhibit here.  I just need a little

 7   time to go get it.

 8             Okay.  If I've done this right, what we're

 9   going to call Exhibit 1 in this deposition -- I believe

10   it had a different number in the deposition.  But this

11   is a deputy daily worksheet for January 21st, 2022.

12             Do you see that?

13        A.    January 21st, 2022, yes, sir.

14             (Exhibit No. 1 was marked for identification

15             and is attached hereto.)

16   BY MR. BASTIAN:

17        Q.    And that's for you; correct?

18        A.    That is for me, yes, sir.

19        Q.    And you've reviewed this document; correct? I

20        A.    have, sir.

21        Q.    Okay.  Before I ask any questions, as you sit

22   here today, based on your knowledge of the incident,

23   based upon having reviewed the complaint, and based upon

24   having reviewed this document, do you believe that you

25   complied with all the coding requirements for SACRS that
```

24

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1   the LSAD [verbatim] imposes and expects of

 2   sheriff's deputies?

 3          MR. INYANG:  I'm going to object to the extent

 4   that calls for speculation.  And it's vague and

 5   ambiguous and compound.

 6          But if you understand, you can go ahead and

 7   respond.

 8          THE WITNESS:  I do understand, sir.

 9   BY MR. BASTIAN:

10      Q.   Okay.  Did you?

11      A.   Can you repeat the question one more time,

12   please.

13          MR. BASTIAN:  Sure.

14          I'll have the court reporter repeat it, please.

15          (The record was read by the licensed

16          stenographer as follows:

17             "QUESTION:  Okay.  Before I ask any

18          questions, as you sit here today, based on your

19          knowledge of the incident, based upon having

20          reviewed the complaint, and based upon having

21          reviewed this document, do you believe that you

22          complied with all the coding requirements for

23          SACRS that the LASD imposes and expects of

24          sheriff's deputies?")

25          MR. INYANG:  One last objection.  Vague as to
```
                                                          25

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1   time.
 2           But you can go ahead and respond.
 3           THE WITNESS:   No.
 4   BY MR. BASTIAN:
 5       Q.   Where did you fall short?
 6       A.   In the coding, sir.
 7       Q.   Yes.  Yes, you can go ahead.
 8       A.   Oh, the coding, sir, on one -- one of the
 9   calls.
10       Q.   What -- what was deficient about the way you
11   prepared this?
12       A.   Instead of clearing that specific call with the
13   Code 941, I cleared it with a 940.
14       Q.   Can you explain the difference between a 941
15   clear and a 940.
16       A.   Yeah.  Of course.  The 940 clearance means that
17   there is no SACR, the Sheriff's Automated Contact
18   Reporting system report needed.  The 941 code means that
19   the report is needed for one person.
20       Q.   And why should you have entered 941 in this
21   particular case?
22       A.   Based on the fact that I detained someone,
23   that's specific for that specific incident.
24       Q.   When you say "one person," wasn't -- wasn't
25   your -- the other person that was there, Magdaleno, also
```

26

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1   required to report the detention?
 2            MR. INYANG:  Objection to the extent that calls
 3   for speculation.
 4            If you -- if you know, you can respond.
 5            THE WITNESS:  I don't know.
 6   BY MR. BASTIAN:
 7       Q.   Okay.  Were there any other separate reasons
 8   why this should have been cleared as a 941 with a report
 9   needed that you're aware of?
10       A.   No, sir.
11       Q.   What about the -- you do concede having
12   reviewed the videotape that as part of this detention,
13   you and the other responding deputy, Magdaleno,
14   handcuffed Mr. Hirsh; correct?
15       A.   Yes.
16       Q.   And put him in the back seat of the patrol car
17   that -- it was actually an SUV that you arrived at the
18   casino in; right?
19       A.   Yes.
20       Q.   Isn't there a separate requirement that anybody
21   detained in the back seat of a patrol car during an
22   investigation that also needs to be reported to SACRS
23   and also needs a report?
24       A.   Yes.
25       Q.   Okay.  At any time was force applied to
```

27

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

 1    Mr. Hirsh?

 2            MR. INYANG:  Objection.  Argumentative.  Lacks

 3    foundation.  Also, vague.

 4            But you can go ahead and respond if you

 5    understand the question.

 6            THE WITNESS:  I do understand the question,

 7    sir.

 8            MR. INYANG:  You can answer his question.

 9            THE WITNESS:  I did not use force, sir.

10    BY MR. BASTIAN:

11      Q.    At any time was a wrist hold put on Mr. Hirsh

12    while he was being handcuffed?

13      A.    What do you mean by "arrest

14      Q.    hold"?A "wrist hold," I said.

15      A.    Oh.  A wrist hold?

16      Q.    Yes.

17            MR. INYANG:  I'm going -- I'm going to object

18    to that as vague and ambiguous.

19            But you can go ahead and respond.

20            THE WITNESS:  Yes.

21    BY MR. BASTIAN:

22      Q.    Okay.  So there was a control hold that was

23    applied on him while handcuffs were being placed;

24    correct?

25            MR. INYANG:  Same objection.

                                                          28

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1                THE WITNESS:   No.

2    BY MR. BASTIAN:

3        Q.   When you reviewed the videotape of the

4    handcuffing, you did see you and Deputy Magdaleno

5    handcuffing him; correct?

6    A.   Yes, sir.  So I -- if I may, sir, it was a control

7         hold; however, it wasn't -- he wasn't resistant

8    when I was applying that hold.

9        Q.   Well, don't control holds count as uses of

10   force that are subject to reporting requirements?

11       A.   Not necessarily, sir.  Only if the person being

12   detained is resistant.

13       Q.   What if the person complains that the control

14   hold hurt him?

15               MR. INYANG:  I'm going to object.  Lacks

16   foundation.  Calls for speculation.

17               But you can go ahead and respond.

18   THE WITNESS:  If a person -- if I'm -- from what I

19   understand that you're saying, if a person complains

20   from a hold being applied to them, is that force?

21

22               MR. BASTIAN:  No, no.

23   BY MR. BASTIAN:

24       Q.   To be clear, if somebody is complaining about

25   pain inflicted during a control hold, isn't that

                                                        29

REGAL

**Plaintiff Hirsh's Exhibits, p. 98 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1    something that you are required to report?

 2        A.    Correct.

 3        Q.    Okay.  Didn't, in this particular case,

 4    Mr. Hirsh complain about his arm feeling like it had

 5    been pulled off?

 6        A.    Not to me, sir.

 7        Q.    What about to Deputy Magdaleno?

 8            MR. INYANG:  Objection.  Calls for speculation.

 9            You can go ahead and respond if you know.

10            THE WITNESS:  I don't know, sir.

11    BY MR. BASTIAN:

12        Q.    Would it be fair to say that if he did say that

13    and if either one of yours or Magdaleno's Axon device

14    was on, that it would have been picked up?

15            MR. INYANG:  Objection.  Same objection.

16            But you can go ahead and respond if you know.

17            THE WITNESS:  I'm not sure, sir.

18    BY MR. BASTIAN:

19        Q.    Well, at any time from the moment that you

20    first made contact with Mr. Hirsh until the time that he

21    was brought outside and you put him in the patrol car,

22    you and your colleague, Deputy Magdaleno, were you ever

23    more than a few steps away from Mr. Hirsh?

24        A.    No, sir.

25        Q.    Okay.  Let's talk about the Axon device.  Were
```

30

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1  you called in by Lieutenant Healey to talk about that

2  Axon device?

3       A.   Yes.

4       Q.   So explain to me who Lieutenant Healey is.

5       A.   Lieutenant Healey was at the time assigned to

6  our station as a lieutenant, in other words, our

7  supervisor.  And he's a person who made it known to me

8  that I didn't -- excuse me -- that I didn't activate my

9  body-worn camera during the incident.

10      Q.   So that happened after you had been served with

11 the summons and complaint; right?

12      A.   That is correct, sir.

13      Q.   Okay.  So he found out about this incident as a

14 result of reading the summons and complaint; correct?

15      A.   Yes.

16      Q.   Okay.  And did he admonish you about that

17 issue?

18      A.   Regarding the body-worn activation, our failure

19 to activate my body-worn camera?

20      Q.   Exactly.

21      A.   That is correct.

22      Q.   And something went into your personnel file?

23      A.   That is correct, sir.

24      Q.   Okay.  And he told you that it was going into

25 the personnel file?

31

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1   they start recording, but they're on the whole day.

 2           So just like that, our -- our body-worn camera

 3   is on the entire day.  And it's not -- it doesn't record

 4   until we tell it to start recording by pressing the

 5   center button two times.  Once we press that center

 6   button two times, the camera automatically preserves the

 7   60 seconds before that press.  And after that press,

 8   it's the same continuous video but with audio now.

 9       Q.   So -- all right.  Correct me if I'm wrong.  One

10   thumb with the video.  Another thumb with the center

11   button?

12       A.   The center button is the video.  The other

13   button is just the power button.

14       Q.   I see.  Now I understand.  So both the video

15   and the audio are being activated from the button that

16   is below the lens?

17       A.   You are correct, sir.

18       Q.   All right.  Now that's been cleared up.  Now I

19   understand.  Thank you.

20       A.   Yes, of course.

21       Q.   What do you believe happened on the night of

22   the incident that the video or the audio didn't take

23   hold?

24       A.   I believe I pressed it, but I didn't press it

25   hard enough.  So it's two continuous presses.  So it's
```

37

REGAL

**Plaintiff Hirsh's Exhibits, p. 101 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    one, two.  I believe that maybe I might have pressed it

2    once.  And once I pressed the other one, I didn't -- I

3    didn't press it hard enough for it to activate.

4        Q.   Well, on either of the two presses, if you had

5    pressed hard enough, you would have gotten at least

6    something; right?

7            MR. INYANG:  I'm going to object to the extent

8    that calls for speculation.

9            You can respond if you know.

10           THE WITNESS:  Had I activated the camera,

11   yes.

12   BY MR. BASTIAN:

13       Q.   Okay.  So it would be fair to say that --

14   that on this particular occasion you pressed down twice

15   unsuccessfully?

16       A.   Yes.

17       Q.   Okay.  Now, at the top of that camera, there's

18   a screen that lets you know whether or not it's

19   recording; right?

20       A.   Yes.

21       Q.   Did you ever check to see if it was

22   recording on that screen?

23       A.   No.

24       Q.   When you were out in the parking lot during the

25   course of putting Mr. Hirsh in the patrol car and

38

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

 1  ambiguous and argumentative.

 2          But you can go ahead and respond if you

 3  understand.

 4          THE WITNESS:  Can you repeat the question, sir,

 5  please.

 6  BY MR. BASTIAN:

 7      Q.    Prior -- between the time that he left the

 8  men's room and the time he started talking to you at the

 9  beginning of this tape, seconds -- seconds had lapsed,

10  one, two maybe?

11      A.    Yes.

12      Q.    Okay.  Now, where I've stopped the tape at 7

13  seconds, he's pointing to where he wants to go; correct?

14      A.    Yes.

15      Q.    Okay.  Was the casino noisy at that point?

16      A.    Well, what do you mean by that, sir?

17      Q.    Well, I'll represent to you that he went into

18  the men's room in order to place a phone call so he

19  could hear the listener.  Was it that kind of noisy?

20      A.    No.

21      Q.    Okay.  All right.  So at that point that

22  he's -- he did make it clear to you that he wanted to

23  talk to you over at one of those empty tables; right?

24      A.    At that

25      Q.    point?Yes.

                                                              57

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1        A.    At that point, I didn't even know who he was.

2        Q.    Okay.

3        A.    Yeah, I was going to -- we were trying to

4    figure that out because -- that's why he kind of walked

5    past us, because I wasn't sure who was the person we

6    were supposed to be contacting at that point.  And when

7    he spoke to us there, he said, "We'll talk over there."

8    But I -- I didn't know -- I'm like, "What do you mean

9    talk?"  I didn't know who he was at that point.

10       Q.    Okay.  So I'm going to continue with the tape.

11             So he was walking over there, and both of you

12   were following one step behind; right?

13       A.    Yes.

14       Q.    What was being said while the two of you were

15   walking one step behind?

16       A.    So at that point, we -- we kind of formulated

17   the opinion that he was a person who needed a contact,

18   so we were telling him to -- to stop and to -- to talk

19   to us.

20       Q.    When you say "we formulated the opinion," how

21   did you form the conclusion that that was a joint --

22       A.    Well, I -- I rephrase that, sir.  I formulated

23   the opinion.  I can't know what my partner is thinking.

24   But I formulated the opinion based on the fact that the

25   security guard had told us he was walking.  That's --

58

REGAL

**Plaintiff Hirsh's Exhibits, p. 104 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    that's him.

2        Q.    Okay.  So if we have 2 seconds coming out of

3    the men's room to the corner, and then 12 seconds on

4    this tape, we're 14 seconds into your first interaction

5    with him; right?

6        A.    I'd say so, yeah.

7        Q.    And at that point, had he made any aggressive

8    actions towards anybody?

9            MR. INYANG:  Object as to vague.  The question

10   is vague and ambiguous.

11           But you can go ahead and respond if you

12   understand.

13           THE WITNESS:  I don't know.

14   BY MR. BASTIAN:

15       Q.    Well, did he appear to have trouble

16   communicating to you where he wanted to talk to you?

17       A.    So did he appear to have trouble communicating

18   to us where he wanted to talk to us?  That's what you're

19   asking?

20       Q.    Yes.

21       A.    He didn't have trouble telling us.  He said he

22   wanted to talk.

23       Q.    Okay.  So he didn't appear to be impaired when

24   he told you he wanted to talk over by the tables; right?

25       A.    Right.

                                                          59

REGAL

**Plaintiff Hirsh's Exhibits, p. 105 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    BY MR. BASTIAN:
2        Q.    Okay.   Now, on prior occasions, you've arrested
3    people from the casino for trespassing; correct?
4        A.    Yes.
5        Q.    And in those -- isn't it true that in most of
6    those cases, by the time you get there, the security
7    staff had already handcuffed that person or detained
8    that person; right?
9        A.    Yes, sir.
10       Q.    This was somewhat unusual in the fact that the
11   security hadn't done that in this case; right?
12              MR. INYANG:   Objection.   Vague and ambiguous.
13   Misleading.   Argumentative.
14              But you can go ahead and respond.
15              THE WITNESS:   I'm not sure if it's unusual,
16   sir.   It's just a different situation.
17   BY MR. BASTIAN:
18       Q.    Well, have you ever had a situation where you
19   were asked to remove somebody from trespassing from the
20   casino and you arrived at the casino and the person was
21   being allowed to walk around by the security staff?
22       A.    I don't recall.
23       Q.    It never had happened before;
24       A.    right? I simply don't know, sir.
25       Q.    Okay.   Well, you didn't have any reason to

                                                              62

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
1   was going to that table.  He told you so; correct?

2           MR. INYANG:  Objection.  Misstates testimony.

3   Calls for speculation.

4           But you can go ahead and respond.

5           THE WITNESS:  In order for my partner and I to

6   conduct a thorough investigation of this matter,

7   especially based on the fact that the initial issue was

8   with the security personnel and Mr. Hirsh, my partner

9   and I wanted to separate both -- separate both parties

10  in order to obtain clear statements and an understanding

11  of what his story was going to be, sir.

12          MR. BASTIAN:  Well, you've given me an

13  explanation of what you've wanted.  Now I'd like the

14  reporter to read the question back, and I'd like you to

15  listen carefully and answer the question.

16          (The record was read by the licensed

17           stenographer as follows:

18            "QUESTION:  Well, you knew exactly where he

19            was going.  He was going to that table.  He

20            told you so; correct?")

21          MR. INYANG:  Same objection.

22          THE WITNESS:  Yes.

23  BY MR. BASTIAN:

24    Q.   So as long as he was walking down that hall,

25  you thought he was walking out with you; right?
```

68

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1        A.    No.

 2        Q.    Well, you hadn't taken any action against him

 3   at that point; correct?

 4        A.    At that point, no.

 5        Q.    Okay.  And when he started to make a left turn

 6   towards the poker tables, that's when both of you

 7   grabbed him; right?

 8        A.    Yes, sir.  And then by actions -- we -- I did

 9   tell him who we were and why we were there.  I don't

10   know if that's -- or a physical action?  Is that what

11   you mean or...

12        Q.    No, you actually -- both of you grabbed him by

13   the wrist and started to handcuff him.

14             MR. INYANG:  Objection.  Argumentative.

15   Misstates testimony.

16   BY MR. BASTIAN:

17        Q.    Isn't that what happened?

18        A.    Yeah, after he refused to stop and talk to us,

19   sir.

20        Q.    No, after he started to make the left turn;

21   right?  That's when you both acted?

22        A.    I don't remember.

23        Q.    We'll show another videotape in a bit.  You say

24   he was a flight risk.  Where was he a flight risk to?One

25   of the empty poker tables?
```

69

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1              MR. INYANG:  Objection.  Argumentative.
 2              You can go ahead and respond.
 3              THE WITNESS:  Anywhere, sir.  I don't know.
 4    BY MR. BASTIAN:
 5       Q.   Well, he was fat, wasn't it?
 6              MR. INYANG:  Objection.  Vague and ambiguous.
 7              THE WITNESS:  I don't know how you define
 8    "fat," sir.
 9    BY MR. BASTIAN:
10       Q.   He had a big belly and had problems with his
11    shorts staying up during the incident?
12              MR. INYANG:  Objection.  Lacks foundation.
13    Vague and ambiguous.
14              You can go ahead.
15              Or calls for speculation.
16              You can go ahead and respond.
17              THE WITNESS:  He had a big stomach, yeah.
18    BY MR. BASTIAN:
19       Q.   Didn't look like he had an athletic build, did
20    it?
21       A.   I don't know what an athletic build, sir, is.
22       Q.   Well, based upon your knowledge -- you have to
23    make assessments in the field of whether or not somebody
24    is a danger to self or others or yourself; right?
25       A.   True.
```

                                                              70

REGAL

**Plaintiff Hirsh's Exhibits, p. 109 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    Q.   And you said this person is a flight risk;

2  right?

3    A.   Yes.

4    Q.   If he started to run, how far do you think he

5  would have got?

6         MR. INYANG:  Objection.  Calls for speculation.

7  Vague and ambiguous.

8         I'm going to instruct him not to answer that.

9         MR. BASTIAN:  Because it's vague and ambiguous?

10        MR. INYANG:  And also, argumentative.  You're

11  asking him to basically speculate about how far

12  Mr. Hirsh can run.  I just don't see how that's a proper

13  question.

14        MR. BASTIAN:  I'm asking -- I'm asking him --

15  I'm trying to find out what his subjective reason is for

16  believing that Mr. Hirsh is a flight risk.

17        MR. INYANG:  Okay.  So then I'll --

18        You can respond to what your subjective

19  assessments were why you thought he was a flight risk.

20        I'll have him --

21        THE WITNESS:  I can respond to that.

22        MR. BASTIAN:  Okay.  But instead of generally,

23  I'd like to ask specific questions.

24  BY MR. BASTIAN:

25    Q.   Did you believe that if this guy took off that

71

Plaintiff Hirsh's Exhibits, p. 110 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

| | |
|---|---|
| 1 | he would have been able to get very far without you |
| 2 | and -- and Magdaleno catching him? |
| 3 | A.   I don't know what Mr. Hirsh's physical |
| 4 | limitations are, sir. |
| 5 | Q.   And did he ever suggest to you that he was |
| 6 | going to run? |
| 7 | A.   I don't think he ever suggested. |
| 8 | Q.   Well, did you have any reason, at that point |
| 9 | that the two of you made physical contact with you |
| 10 | [verbatim], that he thought the two of you were going to |
| 11 | listen to him over at the poker table? |
| 12 | MR. INYANG:  Objection.  Calls for speculation. |
| 13 | But you can go ahead and respond if you know. |
| 14 | THE WITNESS:  I don't know, sir. |
| 15 | BY MR. BASTIAN: |
| 16 | Q.   Okay.  You've been trained in de-escalation |
| 17 | techniques; correct? |
| 18 | A.   That's correct. |
| 19 | Q.   And you've also received training on how to |
| 20 | treat the public different than prisoners are treated at |
| 21 | jail facilities such as the RSC before making your |
| 22 | transition to patrol; correct? |
| 23 | A.   Yes. |
| 24 | Q.   And you've been trained in de-escalation |
| 25 | tactics; correct? |

72

**Plaintiff Hirsh's Exhibits, p. 111 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    to?

2        A.   I don't remember, sir.

3        Q.   More than one?

4        A.   Safe to say yes.

5        Q.   Were there several around?

6        A.   There were several -- there were several

7    around, yes.

8        Q.   Okay.  Now I'm going to put up another exhibit.

9        A.   Okay.

10           MR. BASTIAN:  Bear with me, please.  I am

11   having a little bit of a technical issue at this end.

12           THE WITNESS:  No worries, sir.

13   MR. BASTIAN:  This is going to be Exhibit 3,and this

14   is Defendant California Commerce Club Supplemental

15   Responses to Plaintiff's Request for Production Set

16   One.

17           (Exhibit No. 3 was marked for identification

18   and is attached hereto.)

19   MR. BASTIAN:  And this is a six-page document. I'm

20   going to go right to the exhibit.

21   BY MR. BASTIAN:

22       Q.   Deputy Bermudez, can you see the sign there?

23       A.   Yes.

24       Q.   Did you see that sign when you walked into the

25   premises of the -- the casino on that evening?

80

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    A.    No.

2    Q.    Had you ever seen that sign at that

3    A.    casino? I don't recall, sir.

4    Q.    Have you ever seen any sign warning that

5    everybody at the casino has to wear a mask?

6         MR. INYANG:  Objection.  Vague as to time.

7         But you can go ahead and respond.

8         THE WITNESS:  I don't -- I don't recall, sir.

9    BY MR. BASTIAN:

10    Q.    Okay.  At any time during this incident, did

11    any of the security guards tell you that you needed to

12    be wearing a mask if you were indoors?

13    A.    Not that I remember, sir.

14    Q.    All right.  And were you ever made aware that

15    the dispute that Mr. Hirsh was having with one of the

16    employees at the casino that evening was whether or not

17    he was adequately complying with the mask mandate?

18         MR. INYANG:  Objection to the extent that the

19    question is vague and ambiguous and calls for

20    speculation.

21         But you can go ahead and respond.

22         THE WITNESS:  No, sir.

23    BY MR. BASTIAN:

24    Q.    And at that time, did the Los Angeles Sheriff's

25    Department have a mask mandate?

81

REGAL

Plaintiff Hirsh's Exhibits, p. 113 of 126

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    A.   I'm not sure, sir.

2    Q.   At that time, did the Los Angeles Sheriff's

3  Department have -- was it option- -- do you know if it

4  was optional for deputies whether or not to wear a mask

5  or not?

6    A.   I believe at some point it was.  I'm not sure

7  about the time frame.

8    Q.   And was there ever any policy regarding whether

9  or not deputies would put masks on if they were entering

10 a public facility where masks were required to be worn?

11   A.   I'm not sure.

12   Q.   So to your knowledge, did -- did -- was there

13 any special rules for deputies regarding situations like

14 this where they were entering the casino and there was

15 otherwise a mask ban in place?

16       MR. INYANG:  Objection.  Calls for speculation.

17 Argumentative.

18       You can go ahead and respond if you know.

19       THE WITNESS:  Sir, can you repeat the question,

20 please.

21       MR. BASTIAN:  I'll ask the reporter to, please.

22       (The record was read by the licensed

23       stenographer as follows:

24       "QUESTION:  So to your knowledge, did --

25       did -- was there any special rules for deputies

82

REGAL

**Plaintiff Hirsh's Exhibits, p. 114 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1              regarding situations like this where they
 2              were entering the casino and there was
 3              otherwise a mask ban in place?")
 4              THE WITNESS:  Any special rules, no; that I'm
 5   aware of.
 6   BY MR. BASTIAN:
 7       Q.   And can you tell me how many conversations you
 8   had with security guards before Mr. Hirsh emerged from
 9   the men's room?
10       A.   Continuous conversations or...
11       Q.   Just any kind of conversation.
12       A.   One, two.
13       Q.   Okay.
14       A.   Two.
15       Q.   Do you remember the names of any of those
16   security guards?
17       A.   No.  No, sir.
18       Q.   Do you remember what they looked like?
19       A.   No, sir.
20       Q.   Okay.  We're going to show this from a
21   different angle.
22       A.   Okay.
23       Q.   I'm going to put up another video.  Just give
24   me one second.
25              MR. BASTIAN:  Does everybody see that?
```

REGAL

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1              THE WITNESS:  Yes, sir, I do.
 2              MR. BASTIAN:  Okay.  This is a 58-second video.
 3   Like before, I'm going to run the entire 58 seconds and
 4   then start asking questions.
 5   BY MR. BASTIAN:
 6       Q.   You'll see there are flowers on the table at
 7   the center; correct?
 8       A.   Yes.
 9       Q.   And up in the upper left-hand corner, there --
10   there is Mr. Hirsh with his mask on, and this is the
11   beginning of the walk from the men's room; correct?
12       A.   I'm not sure.  You'd have to play it for me --
13       Q.   Okay.  I just -- I just wanted to orient you up
14   to that corner.
15       A.   Yes.
16              MR. BASTIAN:  I'll ask questions after I run
17   the entire 58 seconds.
18              (Video plays.)
19   BY MR. BASTIAN:
20       Q.   Did you have a chance to watch that?
21       A.   Yes, sir.
22       Q.   I'm going to rewind the tape back to -- well,
23   I'm going -- I'm going to start it at the beginning, and
24   then we'll stop it.
25       A.   Okay.
```

84

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1        Q.   Okay.  In the first 5 seconds, he was walking

 2   directly diagonally down that hall towards the stairs

 3   that lead to the casino tables; correct?

 4        A.   Yes.

 5        Q.   And that's when both of you decided to take him

 6   by his arms; correct?

 7        A.   Yes.

 8             MR. BASTIAN:  I'm going to run it again.

 9             (Video plays.)

10   BY MR. BASTIAN:

11        Q.   In those last 5 seconds, what did you say to

12   him?

13        A.   In those last 5 seconds?

14        Q.   Yeah.

15        A.   I don't -- I don't recall, sir.

16        Q.   Okay.  Prior to putting your hands on him, you

17    said that he was disobeying commands; is that correct?

18        A.   Yes.

19        Q.   What -- how many commands did he disobey?

20        A.   Let's see.  I told him to stop and to speak

21   with us.  And then I believe Deputy Magdaleno -- I'm not

22   sure what his exact words were.  I know he mentioned

23   that he needed to walk outside of the casino to be able

24   to talk to us.

25             At that point, Mr. Hirsh refused and stated he
```

85

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    didn't want to go outside and he wanted to go toward the

2    playing tables, but I'm not sure what -- his exact words.

3

4        Q.    So in other words, one command; right?

5              MR. INYANG:  Objection.  Misstates testimony.

6    BY MR. BASTIAN:

7        Q.    One command; right?

8        A.    I don't know, sir.

9              MR. BASTIAN:  I'm going to start the tape

10   again.

11             (Video plays.)

12   BY MR. BASTIAN:

13       Q.    Do you know in those last 5 seconds if

14   Mr. Hirsh was being pushed from behind towards the end

15   of the hallway?

16             MR. INYANG:  Objection to the extent that it

17   calls for speculation.  Vague and ambiguous.

18             But you can go ahead and respond.THE

19             WITNESS:  By whom, sir?

20   BY MR. BASTIAN:

21       Q.    By Deputy Magdaleno.

22             MR. INYANG:  Same objections.

23             THE WITNESS:  He was being guided by us, not

24   pushed.

25   ///

REGAL

**Plaintiff Hirsh's Exhibits, p. 118 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    BY MR. BASTIAN:

2        Q.    <u>At least some amount of force was being used;</u>

3    <u>correct?</u>

4            MR. INYANG:  Objection

5            THE WITNESS:  .<u>No, sir</u>.

6    BY MR. BASTIAN:

7        Q.    <u>So you did -- you did not see Mr. Hirsh being</u>

8    <u>pushed in that last 3 seconds of the clip; correct?</u>

9        A.    <u>Not pushed, no, sir.</u>

10       Q.    Okay.  We're at 25 seconds into this clip.

11       A.    I'm sorry to interrupt you, sir, if I may.

12       Q.    Yeah.

13       A.    You said "force," sir.  At least non-reportable

14   force.

15       Q.    So some force was being used, just not the

16   amount that you believe was required to be reported on

17   SACRS or in a subsequent incident report; correct?

18       A.    Right.  Like force is any -- any physical

19   effort used on another person.  That's how at least our

20   department sees force.

21       Q.    At 25, where is your left hand?  Do you know?

22       A.    Twenty-five seconds, my left hand?

23       Q.    Yeah.

24       A.    I think I'm trying to cup or support his left

25   bicep -- or right bicep.  I'm sorry.

87

REGAL

**Plaintiff Hirsh's Exhibits, p. 119 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
 1              stenographer as follows:
 2                  "QUESTION:  Okay.  When Mr. Hirsh told you
 3              that he didn't want to go outside, that he
 4              wanted to talk to you inside, did you give him
 5              any time to reconsider his answer?")
 6              MR. INYANG:  Same objection.
 7              THE WITNESS:  No.
 8              MR. BASTIAN:  Starting this tape at 27, I'm
 9      going to run it until he's handcuffed.
10              THE WITNESS:  Okay.
11              MR. BASTIAN:  To 50.
12              (Video plays.)
13      BY MR. BASTIAN:
14          Q.  Now, during that time, did Hirsh -- didn't
15      Hirsh complain about pain, about the way he was being
16      handled at that point?
17          A.  No.
18          Q.  Did he ever say during the course of the
19      evening it felt like his arm had been ripped off?
20          A.  No, sir.
21          Q.  And he was not resisting, but you had two hands
22      on him; is that correct?
23          A.  Yes, sir.
24          Q.  While the other deputy was putting handcuffs on
25      his left arm; is that correct?
```

91

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1    Q.    Did Magdaleno tell him that he was a flight
2  risk?

3          MR. INYANG:  Objection.  Calls for speculation.
4          You can respond if you know.

5          THE WITNESS:  Yeah, I don't -- I don't recall,
6  sir.

7  BY MR. BASTIAN:

8    Q.    Did you tell him that he disobeyed your
9  commands?

10   A.    I did tell him that at some point, which is why
11 I handcuffed him.

12   Q.    But during this conversation, did you tell him
13 that he was -- that one of the reasons that he was out
14 here was because you were disobeying his commands
15 [verbatim]?

16   A.    I don't recall that.

17   Q.    Well, what was the reason that you told him
18  that he had gone through this 15-minute-plus detention?

19   A.    So I advised him that the summary of the events
20 that had occurred were the fact we were detaining him
21 pending trespassing investigation.  I told him that we
22 handcuffed him because he was being detained and that he
23 was released and not arrested based on the fact that
24 there was no violation of the trespassing.

25         MR. INYANG:  Counsel, is it fine if we can take

121

REGAL

**Plaintiff Hirsh's Exhibits, p. 121 of 126**

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

1          I just want to add one little caveat that also

2    indicated, is that for any reason if I'm not able to get

3    all the documents for the production, that I'll reach

4    out to you that -- and request for an extension on that.

5    I think that was the only thing that I just wanted --

6          MR. BASTIAN:  Thank you.  And we request your

7    best efforts.  And if you need further time, of course,

8    we would be amenable.

9          MR. INYANG:  Okay.  Great.  Thank you.

10         MR. BASTIAN:  I think we are finished here,

11   everybody.  Thank you very much.

12         THE LICENSED STENOGRAPHER:  May I get copy

13   orders on the record before we go off real quick.  Does

14   anybody need a copy?

15         MR. INYANG:  I'll take a copy.

16         MS. KHACHATRYAN:  We still haven't decided, so

17   we'll let you know if we need a copy.

18         THE LICENSED STENOGRAPHER:  Great.  Thank you

19   so much.

20         (The deposition proceedings concluded

21         at 4:46 p.m.)

22              *   *   *   *

23

24

25

                                                      137

ROBERT W. HIRSH vs CALIFORNIA COMMERCE CLUB, INC., et al.
George Bermudez on 05/23/2023

```
1    STATE OF CALIFORNIA    )
     COUNTY OF ORANGE       )
2

3              I, JANUARY DAWN ALLEN, Certified Shorthand Reporter,

4    License No. 13748, for the State of California, do hereby

5    certify:

6              That, prior to being examined, the witness

7    named in the foregoing deposition GEORGE BERMUDEZ,

8    was by me duly sworn to testify the truth, the whole

9    truth, and nothing but the truth;

10             That the testimony of the witness, the

11   questions propounded, and all objections and statements

12   made at the time of the examination were recorded

13   stenographically by me and were thereafter transcribed;

14             Further, that if the foregoing pertains to the

15   original transcript of a deposition in a federal case,

16   pursuant to F.R.C.P. 30(e)(2) before completion of the

17   proceedings, review of the transcript  XX_ was __ was

18   not requested.

19             I further certify that I am not a relative or

20   employee of any attorney of the parties, nor

21   financially interested in the action.

22             I declare under penalty of perjury under the

23   laws of California that the foregoing is true and

24   correct.                    January Allen

25
```

138



# PLAINTIFF'S EXHIBIT I

SHERIFF'S STATIONS

emergency call 9-1-1

Altadena, CA 91001 ..................... 626-798-1131
ion, CA 90704 .......................... 310-510-0174
Carson, CA 90745 ...................... 310-830-1123
wood, CA 90262 ....................... 323-568-4800
rritos, CA 90703 ....................... 562-860-0044
Compton, CA 90220 .................... 310-605-6500
escenta, CA 91214 ..................... 818-248-3464
eles, CA 90022 ......................... 323-264-4151
dustry, CA 91744 ...................... 626-330-3322
A 90712 ................................. 562-623-3500
ter, CA 93534 .......................... 661-948-8466
A 90717 ................................ 310-539-1661
301 ..................................... 818-878-1808
90292 .................................. 310-482-6000
90650 .................................. 562-863-8711
.......................................... 661-272-2400
50
......................................... 562-949-2421
0660
......................................... 909-450-2700
73
......................................... 661-255-1121
ita, CA 91355
......................................... 323-820-6700
0044
......................................... 626-285-7171
0
......................................... 888-950-7233
0059
......................................... 909-595-2264
10-855-8850
90069

# Report Information and Victims' Bill of Rights



EAST LA
**Station**

T-272
**Report Number**

415 B
**Classification of Incident**

01/21/22
**Date**

MAGDALENO                    #533970
**Deputy's Name**

## ALEX VILLANUEVA, SHERIFF
Los Angeles County Sheriff's Department

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2023, I caused to be served electronically **DECLARATION OF ROBERT L. BASTIAN, JR., IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION  BY DEFENDANTS CALIFORNIA COMMERCE CLUB, INC.,  AND  SHALIN HALL; PLAINTIFF'S EXHIBITS A-I** on the following person(s):

Michael J. Ryan, Esq.                                    mryan@sksrlawyers.com
Ani Khachatryan, Esq.                       akhachatryan@skssrlawyers.com
STEARNS & RYAN, Lawyers
11777 San Vicente Blvd., Suite 555
Los Angeles, CA  90049
Attorneys for Defendants California
Commerce Club, Inc. and Shalin Hall


Rickey Ivie, Esq.                                            rivie@imwlaw.com
Marina Samson, Esq.                                msamson@imwlaw.com
Ayang Inyang, Esq.                                     ainyang@imwlaw.com
IVIE McNEILL WYATT PURCELL & DIGGS
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
Attorneys for Defendants County of
Los Angeles and LASD Deputies
David Magdaleno and George Bermudez


And I hereby certify that I will mail the document by U.S. mail to the following non-filing user: Not applicable.

/s/ Robert L. Bastian, Jr.
ROBERT L. BASTIAN JR

END OF DOCUMENT

DECLARATION OF ROBERT L. BASTIAN, JR.,

**Plaintiff Hirsh's Exhibits, p. 126 of 126**